**COMMUNITY FOR CREATIVE NON–VIOLENCE, et al.,**
**Plaintiffs,**

v.

**Carmen E. TURNER, Defendant.**

**Civ. A. No. 88–1048.**

United States District Court,
District of Columbia.

May 17, 1989.

Maureen E. McGirr and Andrew T. Karron, Arnold & Porter, Washington, D.C., for plaintiffs.

Linda Lazarus, Asst. Gen. Counsel, Office of the General Counsel, Washington Metropolitan Area Transit Authority, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiffs are Community for Creative Non–Violence ("CCNV"), The National Coalition for the Homeless, the Gray Panthers of Montgomery County, Maryland, Mitchell D. Snyder, Carol Fennelly and Brian Anders. Defendant Carmen E. Turner, is General Manager of the Washington Metropolitan Area Transit Authority (WMATA) and is the chief administrative officer responsible for all activities of WMATA. WMATA is the operating agency for a regional transportation system for the Washington, D.C., area. In early 1987, WMATA adopted a regulation that required all persons seeking to engage in "free speech activity" on WMATA property to first obtain a permit from the WMATA central business office. Plaintiffs bring the action in the instant case as a facial challenge to this regulation, alleging violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiffs seek an injunction enjoining defendant from enforcing this regulation.

## BACKGROUND

WMATA was created by an interstate compact entered into by Maryland, Virginia, and the District of Columbia and incorporated into the D.C. Code to act as the operating agency for a regional transportation system for the Washington, D.C., area.

On January 15, 1987, the Board of Directors of WMATA adopted a "Regulation Concerning the Use by Others of Washington Metropolitan Area Transit Authority Property." Among other things, this regulation requires that all those seeking to

engage in "free speech activities" on publicly owned WMATA property must first obtain a permit either in person or by mail from the WMATA central business office during normal business hours. (§ 100.-10(b)). "Free speech activities" are defined to include all activities that involve "the organized exercise of rights and privileges which deal with political, religious, or social matters and are noncommercial." (§ 100.-7(h)).

The regulation specifically provides for its enforcement through criminal sanctions, fines, and imprisonment in accordance with local laws and ordinances should an unauthorized activity or an authorized activity in an unauthorized manner be conducted on WMATA property (§ 100.6(a) and (b)). This regulation has never been published in the District of Columbia Code, the District of Columbia Municipal Regulations, or in the District of Columbia Statutes–at–Large.

Plaintiffs in the instant case are individuals and community organizations who have either previously engaged or intend to engage in various forms of free speech activity on WMATA property. [See Plaintiffs' Complaint for Declaratory and Injunctive Relief at 8]. In a parallel criminal case, plaintiffs Snyder, Fennelly and other CCNV members were arrested and criminally prosecuted for unlawful entry as a result of allegedly violating the WMATA Regulation. See *United States v. Kochol,* Crim. Action No. M–13602–87 (D.C.Super Ct.) (Hamilton, J.), *Appeal docketed* No. 88–260 (D.C.Ct.App.1988).

In *Kochol,* there were two separate incidents which comprised the charge against the above plaintiffs. The first incident occurred on October 26, 1987. On that occasion, Snyder and two other CCNV members were standing on the sidewalk near the Farragut West Metro Station distributing leaflets. This area is WMATA-owned property and is part of what the WMATA Regulation classifies as the "above-ground area." The three CCNV members had failed to obtain a permit to conduct their activity as required by the WMATA Regulation. After being warned of this WMA-

TA policy, plaintiffs refused to desist from their leafletting activity and were arrested by Metro Police officers on the charge of unlawful entry.

The second incident occurred on November 3, 1987, and involved non-compliance with the terms of a permit that four members of the CCNV had obtained to conduct a prayer vigil. On this occasion, plaintiffs Snyder and Fennelly attempted to join this activity and were advised by WMATA Transit Police that this conduct would constitute a violation of the restrictions on CCNV's permit, which limited the number of vigil participants to four persons. Plaintiffs Snyder and Fennelly were subsequently arrested for unlawful entry based on the alleged violation of the Regulation's permit requirements.

At a hearing on February 2, 1988, Judge Eugene Hamilton of the Superior Court of the District of Columbia dismissed criminal charges brought against plaintiffs arising from their arrests on October 26, 1987, and November 3, 1987. Judge Hamilton ruled the WMATA Regulation under which plaintiffs had been arrested to be overbroad and thus facially unconstitutional. This ruling is presently under appeal. At oral argument, counsel for defendant stated defendant did not consider Judge Hamilton's ruling to be binding on it and it would continue to enforce its regulation. Because of defendant's position, the court believes a case or controversy exists and that this case is ripe for decision.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

To prevail on a motion for summary judgment the moving party must demonstrate that "there is no genuine issue to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). In this facial challenge to the WMATA regulation, I find the essential dispositive facts regarding such an action to be undis-

puted. The material facts are the existence of the WMATA Regulation and the applicability of that Regulation. *See,* Plaintiffs Rule 108(h) Statement of Material Facts Not in Dispute.

## DISCUSSION

The first issue which I must address is whether or not the WMATA Regulation constitutes an unconstitutional prior restraint on the exercise of First Amendment rights. I must do so bearing in mind that any regulation having the power of law that imposes a prior restraint on the exercise of First Amendment rights comes before a court "bearing a heavy presumption against its constitutional validity." *Vance v. Universal Amusement Co.,* 445 U.S. 308, 317, 100 S.Ct. 1156, 1162, 63 L.Ed.2d 413 (1980) quoting *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963)).

■ In evaluating the facial validity of regulations which restrict constitutionally protected free speech on publicly owned government property, it must be determined by the reviewing court whether the proposed forum is a "public forum." If the area in question is deemed to be a "public forum," the reviewing court must decide whether the interests of the State in limiting protected speech are sufficiently strong to outweigh the strong societal interest in protecting freedom of expression. To pass Constitutional muster the regulation must be narrowly tailored to further a substantial government interest. *See United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983).

The parties in the instant case dispute whether WMATA property constitutes public forum status and subject to the above high standard of review. Defendants argue that WMATA Metrorail stations, while public properties, are subject to a lesser standard of scrutiny because, among other things, these areas are not traditional public platforms. Defendant reasons that "Unlike streets and parks, this area has not traditionally served as a place for free public assembly and communication of thoughts by private citizens." (Defen-

dant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment at 7).

In determining whether or not WMATA properly is a public forum, I believe it is necessary to differentiate between the underground areas of WMATA property and the above-ground free area. The above ground free area includes the street-level sidewalk areas owned by WMATA. The Supreme Court in *Grace* found the public sidewalk to constitute public forum property because it is an area that traditionally has been held open to the public for expressive activity. *See Grace,* 461 U.S. at 179, 103 S.Ct. at 1708.

■ This court recognizes that the right of access to public property and the standards for permissible limitations upon such rights are determined according to the character of the property at issue. *See Perry Education Association v. Perry Local Education Association,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). I must therefore determine WMATA's right as a property owner to control its own property. WMATA as a government-created agency clearly possesses this right, but the scope of this right is not unlimited. In seeking to control public access to its facilities for free speech activity, WMATA must tailor its restrictions only to the extent necessary to comply with its stated mission, which is to provide for the safe, efficient operation of its transit system while protecting the safety of Metro patrons and employees. (See WMATA Regulations § 100.1). In order to achieve this stated goal, however, I find the permit requirement to be an unreasonable prior restraint on the exercise of free expression.

■ It is clear that all advance permit requirements controlling free speech activity are not unconstitutional per se. For a permit system lawfully to exist, the issuing authority must make permits available to applicants in a prompt, unobtrusive manner so as not to frustrate or restrict the exercise of their fundamental rights.

The provisions of the WMATA regulation provide that permits may be obtained only

at WMATA's business office either in person or by mail during normal business hours (WMATA Regulation § 100.2(a)). These restrictions impose too great a burden on an individual seeking spontaneously or otherwise to express his or her First Amendment rights. I concur with plaintiffs' argument that the above limitations on the times and locations at which free speech may be exercised create a "built-in delay mechanism that prevents the timely exercise of First Amendment rights." (Plaintiffs' Statement of Points and Authority in Support of their Motion for Partial Summary Judgment at 17).

Clearly, whether an individual can exercise unfettered his freedom of expression in a timely manner is an integral aspect in determining whether a regulation imposes an impermissible prior restraint on free speech. An individual desiring to effectively protest a particular policy or news event, wants to reach the maximum number of people while the issue is most freshly embedded in the public's mind.

The "built-in delay mechanism" inherent in the WMATA permit regulation serves to deter and may even preclude expression necessary to provide an immediate response to late-breaking events. Plaintiffs correctly note that the permit restrictions "impose particularly severe burdens on elderly, handicapped, or working people, or on suburban residents who may find it difficult or impossible to travel to WMATA headquarters to obtain a permit." (Plaintiffs' Statement of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at 10).

The WMATA Regulation defines "free speech" as the "organized exercise of rights and privileges which deal with political, religious, or social matters and are non-commercial." (WMATA Regulation § 100.7(h)).

This language in effect includes *all* expressive activity including peaceful leafletting, praying and speaking on WMATA property. The problem with the regulation's blanket permit requirement is that it does not differentiate between the size of the prospective gathering, the possibility of disruption, or the exact type or value of the expression.

At the criminal hearing on February 2, 1988, brought against plaintiff Snyder and other CCRV members for alleged violations of the WMATA Regulation, District of Columbia Superior Court Judge Eugene N. Hamilton in dismissing all charges, observed:

> ... it applies to all individuals and all activities, all First Amendment activities on all WMATA property without distinguishing between individuals, activities, and that specific property you are talking about ...

*United States v. Kochol*, Criminal Action No. M–13602–87 (Transcript of Hearing at 54–55, Feb. 2, 1988 (D.C. Super Ct.) (Hamilton, J.). I agree with Judge Hamilton's finding and accordingly find the WMATA Regulation's absolute and complete prohibition of free speech activities without a permit to be unnecessarily overreaching in its attempt to achieve these goals.

I therefore find the WMATA Regulation to be facially violative of the First Amendment in that through its overbroad language and applicability it creates an impermissible prior restraint on free speech. Because I find this regulation to be repugnant to the First Amendment and therefore void, I need not address the Fifth and Fourteenth Amendment challenges to the regulations.

Therefore, Plaintiffs' Motion for Partial Summary Judgment is hereby GRANTED.

## ORDER

On this date, the Court issued its opinion in the above titled action. Based on the reasons set forth in that opinion and the entire record in this case, it is

ORDERED that plaintiff's motion for partial summary judgment shall be and hereby is granted; it is further

ORDERED that "Regulation Concerning The Use By Others Of Washington Metropolitan Area Transit Authority Property" (the "WMATA Regulation") be and it hereby is declared unconstitutional in violation

of the First Amendment to the Constitution of the United States; it is further

ORDERED that defendant Turner be, and she hereby is, permanently enjoined from enforcing the WMATA Regulation or from causing or permitting the enforcement of the WMATA Regulation; and it is further

ORDERED that this court shall retain jurisdiction to order such other and further relief as may be appropriate.