UNITED STATES, Appellant,

v.

**Kris ROTHMEIER, et al., Appellees.**

**Nos. 88–244 to 88–246, 88–259 to 88–262.**

District of Columbia Court of Appeals.

Argued Feb. 28, 1989.
Decided Feb. 28, 1990.

Curtis E. Hall, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

Arthur B. Spitzer and Nina S. Goodman, with whom Timothy D. Junkin, L. Barrett Boss and Steven M. Salky, Washington, D.C., were on the brief, for appellees.

Before NEWMAN, TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This government appeal arises from the dismissal of multiple prosecutions brought against the defendants for refusing to cease free speech activities on property belonging to the Washington Metropolitan Area Transit Authority ("WMATA") near a subway entrance.[1] The defendants continued with their activity despite a WMATA transit police officer's warning that such activity without a permit was unauthorized. The applicable WMATA regulation forbade any "free speech activity" on WMATA property except pursuant to a permit issued by WMATA.[2] Following the defendants' subsequent arrest under the District's unlawful entry statute, D.C.Code § 22–3102 (1989), the trial court dismissed the informations on the ground that the permit requirement was overbroad and hence unconstitutional. The government appealed to this court, pursuant to D.C. Code § 23–104(c) (1989).

During the pendency of this appeal before us, events were unfolding in a related case in the local federal courts. A group of plaintiffs (including two of the appellees before us) brought suit against the general manager of WMATA, seeking a permanent injunction against enforcement of the free speech regulation as unconstitutionally invalid on its face. The trial court granted such an injunction in May 1989. *Community for Creative Non–Violence v. Turner*, 714 F.Supp. 29 (D.D.C.1989).[3] On ap-

1. WMATA is an entity created in 1966, with the consent of Congress, by Virginia, Maryland and the District of Columbia, to provide a unified system of regional transportation, including a mass transit system. *See Hall v. Washington Metro. Area Transit Auth.*, 468 A.2d 970, 971 (D.C.1983). The activities at issue here took place on two separate occasions in the fall of 1987 near the entrance to the subway stop at 17th and I Streets, N.W. One event involved handing out leaflets and the other engaging in a prayer vigil.

2. Regulation Concerning the Use of Washington Metropolitan Area Transit Authority Property §§ 100.10, 100.2 (adopted Jan. 15, 1987) [hereinafter "Regulation"]. "Free speech activity" is defined in the regulation as "the organized exercise of rights and privileges which deal with political, religious, or social matters and are noncommercial" in nature. *Id.* at § 100.7(h).

3. The operative provisions of the order read that it was:

 ORDERED that "Regulation Concerning The Use By Others Of Washington Metropolitan Area Transit Authority Property" (the "WMATA Regulation") be and it hereby is declared unconstitutional in violation of the First Amendment to the Constitution of the United States; it is further

 ORDERED that defendant [WMATA General Manager] Turner be, and she hereby is, permanently enjoined from enforcing the WMATA Regulation or from causing or permitting the enforcement of the WMATA Regulation....

*Community for Creative Non–Violence, supra,* 714 F.Supp. at 33–34.

peal, the United States Court of Appeals for the District of Columbia Circuit affirmed the injunction as applied to the permit requirement, on the ground that the requirement was not sufficiently "narrowly tailored" to the government's legitimate interests to qualify as a reasonable time, place, and manner restriction. *Community for Creative Non–Violence v. Turner*, 893 F.2d 1387, (D.C.Cir.1990).[4]

The District of Columbia unlawful entry statute provides for the punishment of anyone who remains on either private or public property without lawful authority and who refuses to leave on the demand of the person lawfully in charge. D.C.Code § 22–3102 (1989). With respect to public property, in addition to and independent of the evictor's wishes, there must exist "some additional specific factor" establishing the defendant's "lack of a legal right to remain." *See, e.g., United States v. Powell*, 563 A.2d 1086, 1089 (D.C.1989); *O'Brien v. United States*, 444 A.2d 946, 948 (D.C.1982). The only additional specific factor invoked here is the permit requirement of the regulation. If that requirement is invalid, it is effectively conceded that the prosecution must fail. *See Abney v. United States*, 451 A.2d 78, 82 (D.C. 1982) (conviction for unlawful entry reversed where based on regulation unconstitutionally applied to defendant).

Although the cited decision by the local federal appellate court is not per se binding on us, such a decision is, as we have long recognized, "entitled to great respect." *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). At least since the issuance of the injunction by the federal trial court, the permit requirement has not been enforced and any future enforcement will depend upon the issuance of revised regulations in accordance with the federal appellate court decision. Under the circumstances and sharing the concern as to the overbreadth of the permit requirement, we believe that we should treat the holding of the federal decision as persuasive authority "in the interest of harmony between court systems and uniformity of result in the same geographical area." *Hornstein v. Barry*, 560 A.2d 530, 536 n. 15 (D.C.1989) (en banc).[5] Accordingly, the order dismissing the criminal informations against appellees is

*Affirmed.*

---

**4.** The trial court's injunction also applied to certain other provisions of WMATA's regulations dealing with the conduct of free speech activities on WMATA property. With respect to certain of these provisions, the court remanded for further development of the factual record necessary to evaluate their constitutionality. *Community for Creative Non–Violence, supra,* 893 F.2d at 1395–96.

**5.** Certain of the appellees also challenge the validity of the permit regulation on the ground that it was never "published" as required by section 76(e) of the WMATA Compact, as amended by the Act of June 4, 1976, Pub.L. No. 94–306, 90 Stat. 672. That subsection requires that regulations adopted under section 76 "be adopted and published in accordance with all standards of due process." (The version of section 76(e) of the WMATA Compact appearing in D.C.Code § 1–2431 (1987) is inaccurate. The Code's section 76(e) is an amended version ratified by the D.C. Council on October 5, 1984. It is not yet effective, however, because it has not

received the requisite congressional approval. Act of June 4, 1976, Pub.L. No. 94–306, § 4, 90 Stat. 672, 675.)

The government argues that the regulation at issue here was not adopted under section 76(e), but under the general authority granted by sections 12(c) and 12(j) of the Compact (which have no publication requirement), and that, in any event, the regulations were published in proposed form. We need not rule definitively on these arguments. We note, however, the canon of statutory construction that specific provisions, such as section 76(e), ordinarily prevail over general provisions such as those in sections 12(c) and 12(j). *Office of People's Counsel v. Public Serv. Comm'n*, 477 A.2d 1079, 1084 (D.C.1984). We also note that the provision could be read to contemplate the publication in some manner of the final regulations, whether or not due process requires such publication.