## VANCE ET AL. v. UNIVERSAL AMUSEMENT CO., INC., ET AL.

No. 78–1588. Argued November 28, 1979—Decided March 18, 1980

*Lonny F. Zwiener,* Assistant Attorney General of Texas, argued the cause for appellants. With him on the brief were *Mark White,* Attorney General, *John W. Fainter, Jr.,* First Assistant Attorney General, *Ted L. Hartley,* and *Douglas B. Owen* and *Gerald C. Carruth,* Assistant Attorneys General.

*Frierson M. Graves, Jr.,* argued the cause for appellees and filed a brief for appellee King Arts Theatre, Inc.*

---

*\*Charles H. Keating, Jr., pro se, Richard M. Bertsch, James J. Clancy,*

PER CURIAM.

The question presented in this unusual obscenity case is whether the United States Court of Appeals for the Fifth Circuit correctly held a Texas public nuisance statute unconstitutional. The Court of Appeals read the Texas statute as authorizing a prior restraint of indefinite duration on the exhibition of motion pictures without a final judicial determination of obscenity and without any guarantee of prompt review of a preliminary finding of probable obscenity. Cf. *Freedman* v. *Maryland,* 380 U. S. 51 (1965); *Southeastern Promotions, Ltd.* v. *Conrad,* 420 U. S. 546 (1975). In this Court, appellants argue that such a restraint is no more serious than that imposed by Texas' criminal statutes and that it is therefore constitutional. We find appellants' argument unpersuasive and affirm the judgment of the Court of Appeals.

In 1973, appellee King Arts Theatre, Inc. (hereafter appellee), operated an indoor, adults-only motion picture theater. In October of that year, appellee's landlord gave notice that the theater's lease would be terminated. The notice stated that the County Attorney had informed the landlord that he intended to obtain an injunction to abate the theater as a public nuisance in order to prevent the future showing of allegedly obscene motion pictures. Appellee responded by filing suit in the United States District Court for the Northern District of Texas seeking an injunction and declaratory relief to forestall any action by the County Attorney under the Texas nuisance statutes. The case was transferred to a three-judge District Court sitting in the Southern District of Texas for consolidation with a number of other pending obscenity cases.

Two different Texas statutes were in issue at that point.

and *Bruce A. Taylor* filed a brief for Mr. Keating as *amicus curiae* urging reversal.

*Michael A. Bamberger* filed a brief for the American Booksellers Association, Inc., et al. as *amici curiae* urging affirmance.

The first, Tex. Rev. Civ. Stat. Ann., Art. 4666 (Vernon 1952),[1] authorizes injunction suits in the name of the State against alleged nuisances. If successful, "judgment shall be rendered abating said nuisance and enjoining the defendants from maintaining the same, and ordering that said house be closed for one year," unless certain conditions are met. The second nuisance statute, Art. 4667 (a) (Vernon Supp. 1978), provides that certain habitual uses of premises shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen. Among the prohibited uses is "the commercial manufacturing, commercial distribution, or commercial exhibition of obscene material."[2]

---

[1] "Art. 4666. Nuisance; prosecution

"Whenever the Attorney General, or the district or county attorney has reliable information that such a nuisance exists, either of them shall file suit in the name of this State in the county where the nuisance is alleged to exist against whoever maintains such nuisance to abate and enjoin the same. If judgment be in favor of the State, then judgment shall be rendered abating said nuisance and enjoining the defendants from maintaining the same, and ordering that said house be closed for one year from the date of said judgment, unless the defendants in said suit, or the owner, tenant or lessee of said property make bond payable to the State at the county seat of the county where such nuisance is alleged to exist, in the penal sum of not less than one thousand nor more than five thousand dollars, with sufficient sureties to be approved by the judge trying the case, conditioned that the acts prohibited in this law shall not be done or permitted to be done in said house. On violation of any condition of such bond, the whole sum may be recovered as a penalty in the name and for the State in the county where such conditions are violated, all such suits to be brought by the district or county attorney of such county."

In the early stages of the litigation the parties appear to have assumed that this statute applied to the exhibition of obscene motion pictures; at least the District Court so understood the statute. The Court of Appeals, however, read Art. 4666 as applicable only to the types of nuisance specified in Art. 4664 none of which relates to obscenity. See n. 6, infra.

[2] "Art. 4667. Injunctions to abate public nuisances

"(a) The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses

The three-judge District Court held that both of these statutes authorize state judges, on the basis of a showing that obscene films have been exhibited in the past, to prohibit the future exhibition of motion pictures that have not yet been found to be obscene. 404 F. Supp. 33 (1975). Recognizing that it is not unusual in nuisance litigation to prohibit future conduct on the basis of a finding of undesirable past or present conduct, the District Court read *Near* v. *Minnesota ex rel. Olson,* 283 U. S. 697 (1931), to require a special analysis when the prohibited future conduct may be protected by the First Amendment.[3] The routine abatement procedure, which the District Court characterized as "the heavy hand of the public nuisance statute," was considered constitutionally deficient in the First Amendment context.

---

shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen thereof:

"(1) For gambling, gambling promotion, or communicating gambling information prohibited by law;

"(2) For the promotion or aggravated promotion of prostitution, or compelling prostitution;

"(3) For the commercial manufacturing, commercial distribution, or commercial exhibition of obscene material;

"(4) For the commercial exhibition of live dances or exhibition which depicts real or simulated sexual intercourse or deviate sexual intercourse;

"(5) For the voluntary engaging in a fight between a man and a bull for money or other thing of value, or for any championship, or upon result of which any money or anything of value is bet or wagered, or to see which any admission fee is charged either directly or indirectly, as prohibited by law."

[3] "In its defense the state has tried to distinguish the instant case from *Near* v. *Minnesota, supra,* but the attempt is not successful. In both cases the state made the mistake of prohibiting future conduct after a finding of undesirable present conduct. When that future conduct may be protected by the first amendment, the whole system must fail because the dividing line between protected and unprotected speech may be 'dim and uncertain.' *Bantam Books* v. *Sullivan,* 372 U. S. [58, 66 (1963)]. The separation of these forms of speech calls for 'sensitive tools,' *Speiser* v. *Randall,* 357 U. S. 513 . . . (1958), not the heavy hand of the public nuisance statute." 404 F. Supp., at 44.

Specifically, the District Court noted that a general prohibition would operate as a prior restraint on unnamed motion pictures, and that even orders temporarily restraining the exhibition of specific films could be entered *ex parte*.[4] Moreover, such a temporary restraining order could be extended by a temporary injunction based on a showing of probable success on the merits and without a final determination of obscenity.[5] The District Court concluded that the nuisance statutes, when coupled with the Texas Rules of Civil Procedure governing injunctions, operate as an invalid prior restraint on the exercise of First Amendment rights.

Because the three-judge District Court granted only declaratory and not injunctive relief, the State appealed to the United States Court of Appeals for the Fifth Circuit. See *Gerstein* v. *Coe*, 417 U. S. 279 (1974). A divided panel of that court reversed. 559 F. 2d 1286 (1977). The panel

---

[4] In dissent, MR. JUSTICE WHITE incorrectly assumes that it is "undisputed that any injunction granted under Art. 4667 (a) will be phrased in terms of the *Miller* v. *California*, 413 U. S. 15 (1973), definition of obscenity." *Post*, at 321. This is by no means necessarily so. Under the Texas statutes a temporary injunction prohibiting the exhibition of specific named films could be entered on the basis of a showing of probability of success on the merits of the obscenity issue. Even if it were ultimately determined that the film is not obscene, the exhibitor could be punished for contempt of court for showing the film before the obscenity issue was finally resolved.

[5] "The specific requirements of obtaining an injunction in Texas, which would presumably be utilized in actions pursuant to article 4667, leave much to be desired if they are used in the obscenity context. Rules 680–693a of the Texas Rules of Civil Procedure provide the injunction procedures for Texas. Pursuant to those rules, the state could obtain a temporary restraining order lasting up to ten days, ex parte. As soon as possible, within that ten days, however, a hearing on a temporary injunction is obtainable. The temporary injunction is not a final adjudication on the merits but, once it is obtained, there is no provision for treating the case any differently from any other civil case. The lack of a provision for a swift final adjudication on the obscenity question raises serious doubts of the constitutional usability of the injunction process in Texas for an obscenity situation." 404 F. Supp., at 46.

majority acknowledged that if Art. 4666 authorized the closing of a motion picture theater for all uses for a year, it "would pose serious first amendment questions," 559 F. 2d, at 1290, but held that the District Court had misconstrued Art. 4666 in that it was not intended to apply to obscenity cases.[6]

The panel majority disagreed more fundamentally with the District Court's view of Art. 4667 (a). It held that the injunction procedure authorized by that statute was "basically sound" in its application to an establishment such as appellee's:

> "The statute authorizes an injunction against the commercial manufacture, distribution or exhibition of *obscene* material only. Because the injunction follows, rather than precedes, a judicial determination that obscene material has been shown or distributed or manufactured on the premises and because its prohibitions can apply only to further dealings with obscene and unprotected material, it does not constitute a prior restraint." 559 F. 2d, at 1292 (emphasis in original).

Further, the panel majority found no problem under *Freedman* v. *Maryland*, 380 U. S. 51 (1965), because any temporary restraint entered pending a final adjudication on the issue of obscenity would be imposed by a judge, not an administrative censor. The judgment of the District Court was therefore reversed.[7]

---

[6] The panel interpreted the "such a nuisance" language in the first sentence of Art. 4666, see n. 1, *supra*, as referring to the definition of "common nuisance[s]" in Art. 4664 (Vernon Supp. 1978): gambling houses, houses of prostitution, and places where intoxicating liquors are kept.

[7] Judge Thornberry, dissenting in part, relied on the reasoning of the three-judge District Court:

"As the district court wrote:

'Pursuant to [Rules 680–693a of the Texas Rules of Civil Procedure], the state could obtain a temporary restraining order lasting up to ten days, ex parte. As soon as possible, within that ten days, however, a hearing on a temporary injunction is obtainable. The temporary injunc-

The Court of Appeals granted rehearing en banc, and reversed the panel's holding that Art. 4667 (a) is constitutional. 587 F. 2d 159 (1978).[8] The 8-to-6 majority found the statute objectionable because it "would allow the issuance of an injunction against the future exhibition of unnamed films that depict particular acts enumerated in the state's obscenity statute," *id.*, at 168, and "lacks the procedural safeguards required under *Freedman* v. *Maryland*, 380 U. S. 51. . . ." *Id.*, at 169.[9] The dissenters wrote that a pragmatic assessment of the statute's operation indicated that once the contemplated injunction was in effect, it would impose no greater a prior restraint than a criminal statute forbidding exhibition of materials deemed obscene under *Miller* v. *California*, 413 U. S. 15 (1973).[10]

The Texas defendants appealed to this Court, and we noted probable jurisdiction. 442 U. S. 928. We limit our review

tion is not a final adjudication on the merits but, once it is obtained, there is no provision for treating the [obscenity] case any differently from any other civil case. The lack of a provision for a swift final adjudication on the obscenity question raises serious doubts of the constitutional usability of the injunction process in Texas for an obscenity situation.'" 559 F. 2d, at 1303.

[8] It accepted the panel majority's construction of Art. 4666, *i. e.*, that it was inapplicable in obscenity cases.

[9] In *Freedman*, the Court gave three reasons for holding Maryland's censorship procedures unconstitutional:

"It is readily apparent that the Maryland procedural scheme does not satisfy these criteria. First, once the censor disapproves the film, the exhibitor must assume the burden of instituting judicial proceedings and of persuading the courts that the film is protected expression. Second, once the Board has acted against a film, exhibition is prohibited pending judicial review, however protracted. Under the statute, appellant could have been convicted if he had shown the film after unsuccessfully seeking a license, even though no court had ever ruled on the obscenity of the film. Third, it is abundantly clear that the Maryland statute provides no assurance of prompt judicial determination." 380 U. S., at 59–60.

[10] The dissenters also relied on the panel majority's distinction between a temporary restraint entered by a judge and one entered by an administrative censor.

to the two arguments advanced in appellants' brief: [11] first, that an "obscenity injunction" under Art. 4667 (a)(3) constitutes no greater a prior restraint than any criminal statute and, second, that the Court of Appeals erroneously held that no prior restraint of possible First Amendment materials is permissible.

# I

The Court of Appeals was quite correct in concluding both (a) that the regulation of a communicative activity such as the exhibition of motion pictures must adhere to more narrowly drawn procedures than is necessary for the abatement of an ordinary nuisance,[12] and (b) that the burden of supporting

---

[11] The brief is confined to an attack on the Court of Appeals' holding that Art. 4667 (a) is unconstitutional as applied to allegedly obscene material. At oral argument, appellants' counsel invited us also to review issues relating to Art. 4666 and the question whether the District Court should have abstained. Since the former contention would require us to review a construction of Art. 4666 which all members of the en banc Court of Appeals ultimately accepted, and since the latter contention was not raised in the Court of Appeals, we decline the invitation.

[12] Emphasizing the difference between a regulation touching freedom of expression and the regulation of ordinary commercial activity, in *Freedman* v. *Maryland,* the Court wrote:

"In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. 'One who might have had a license for the asking may . . . call into question the whole scheme of licensing when he is prosecuted for failure to procure it.' *Thornhill* v. *Alabama,* 310 U. S. 88, 97; see *Staub* v. *City of Baxley,* 355 U. S. 313, 319; *Saia* v. *New York,* 334 U. S. 558; *Thomas* v. *Collins,* 323 U. S. 516; *Hague* v. *CIO,* 307 U. S. 496; *Lovell* v. *City of Griffin,* 303 U. S. 444, 452–453. Standing is recognized in such cases because of the '. . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' *NAACP* v. *Button,* 371 U. S. 415, 433; see also Amsterdam, Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 75–76, 80–81, 96–104 (1960)." 380 U. S., at 56.

an injunction against a future exhibition is even heavier than the burden of justifying the imposition of a criminal sanction for a past communication.[13]

As the District Court and the Court of Appeals construed Art. 4667 (a), when coupled with the Texas Rules of Civil Procedure, it authorizes prior restraints of indefinite duration on the exhibition of motion pictures that have not been finally adjudicated to be obscene.[14] Presumably, an exhibitor would be required to obey such an order pending review of its merits and would be subject to contempt proceedings even if the film is ultimately found to be nonobscene.[15] Such prior restraints would be more onerous and more objectionable than the threat of criminal sanctions after a film has been exhibited, since nonobscenity would be a defense to any criminal prosecution.

---

[13] "Any system of prior restraint, however, 'comes to this Court bearing a heavy presumption against its constitutional validity.' *Bantam Books, Inc.* v. *Sullivan,* 372 U. S., at 70; *New York Times Co.* v. *United States,* 403 U. S. [713, 714 (1971)]; *Organization for a Better Austin* v. *Keefe,* 402 U. S. 415, 419 (1971); *Carroll* v. *Princess Anne,* 393 U. S. 175, 181 (1968); *Near* v. *Minnesota ex rel. Olson,* 283 U. S. [697, 716 (1931)]. The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable. See *Speiser* v. *Randall,* 357 U. S. 513 (1958)." *Southeastern Promotions, Ltd.* v. *Conrad,* 420 U. S. 546, 558–559 (1975).

[14] Those courts believed that a short-lived temporary restraining order could be issued on the basis of an *ex parte* showing, and that a temporary injunction of indefinite duration could be obtained on the basis of a showing of probable success on the merits.

We accept their construction of Texas law for purposes of decision. See *Bernhardt* v. *Polygraphic Co.,* 350 U. S. 198, 204–205 (1956).

[15] Cf. *Walker* v. *City of Birmingham,* 388 U. S. 307, 317–321 (1967); *United States* v. *Mine Workers,* 330 U. S. 258, 293 (1947).

Nor does the fact that the temporary prior restraint is entered by a state trial judge rather than an administrative censor sufficiently distinguish this case from *Freedman* v. *Maryland*. "*Any* system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc.* v. *Sullivan*, 372 U. S. 58, 70 (1963) (emphasis added). That a state trial judge might be thought more likely than an administrative censor to determine accurately that a work is obscene does not change the unconstitutional character of the restraint if erroneously entered.

Accordingly, we agree with the Court of Appeals' conclusion that the absence of any special safeguards governing the entry and review of orders restraining the exhibition of named or unnamed motion pictures, without regard to the context in which they are displayed, precludes the enforcement of these nuisance statutes against motion picture exhibitors.

## II

Contrary to appellants' second argument, the Court of Appeals did not hold that there can never be a valid prior restraint on communicative activity. The Court of Appeals simply held that these Texas statutes were procedurally deficient, and that they authorize prior restraints that are more onerous than is permissible under *Freedman* v. *Maryland* and *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U. S. 546 (1975).

Because we find no merit in the contentions advanced on behalf of appellants, the judgment is affirmed.

*It is so ordered.*

Mr. Chief Justice Burger, with whom Mr. Justice Powell joins, dissenting.

I would dismiss the appeal for failure to present a real and substantial controversy "of the immediacy which is an indis-

pensable condition of constitutional adjudication." *Poe* v. *Ullman*, 367 U. S. 497, 508 (1961) (plurality opinion). Alternatively, I would abstain from decision until the Texas courts interpret the challenged statute. I would not reach the merits of this "dispute" at this stage.

This Court's power of constitutional review is "most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity." *Id.*, at 503. This case quite plainly fails to satisfy that rigorous standard. Here, Texas has conceded at oral argument that the injunctive remedy of Art. 4667 (a) is not likely to be used by any Texas prosecutor.[1] In light of this concession, this case recalls *Poe*, where Mr. Justice Frankfurter concluded:

> "The fact that [the State] has not chosen to press the enforcement of this statute deprives these controversies of the immediacy which is an indispensable condition of constitutional adjudication. This Court cannot be umpire to debates concerning harmless, empty shadows." 367 U. S., at 508.

By passing on the constitutionality of the Texas statute, the Court ignores this wise counsel.[2]

---

[1] "QUESTION: Well, what does it—why, then, do you need [this statute], if it is the equivalent of the Texas criminal law?

"MR. ZWEINER: I am not sure that we do, to be frank; but—

"QUESTION: What does it add to the criminal law. It changes the burden of proof, it deprives a person of a jury trial.

"MR. ZWEINER: I don't think it adds anything. As a matter of fact I think it is a cumbersome process and I don't know that the prosecutor after more than two rounds will ever use it again. . . ." Tr. of Oral Arg. 36–37.

[2] It is true that the State was the appellee in *Poe* and that it is the appellant here. This difference, however, should not be controlling for purposes of determining whether the dispute is a real one. Here, the challenged statute was defended in perfunctory fashion, apparently more

Moreover, the need for constitutional decision could be obviated in this case by permitting the Texas courts an opportunity to interpret Texas law. The Court today assumes (1) that "a temporary injunction of indefinite duration" could be issued against a named motion picture "on the basis of a showing of probable success on the merits," *ante,* at 316, n. 14; and (2) that an exhibitor would be subject to criminal contempt proceedings for violating such an injunction even if the motion picture is ultimately adjudged nonobscene, *ante,* at 316, and n. 15. If these assumptions are correct, the statute is obviously flawed. See *Freedman* v. *Maryland,* 380 U. S. 51 (1965). But there is ample reason to believe that the Court may be wrong in today's conjectures; indeed, there is a serious question as to whether the Texas statute even authorizes an injunction against a *named* film. Compare *ante,* at 312, and dissenting opinion of MR. JUSTICE WHITE, *post,* at 325. If such an injunction is permitted, the decision of the Texas Court of Civil Appeals in *Locke* v. *State,* 516 S. W. 2d 949 (1974), casts doubt on the assumption that it can be obtained on a showing of probable success. There, the Texas court in reviewing the validity of a temporary injunction entered against a motion picture exhibitor made a *de novo* on-the-merits determination of obscenity.[3] Are we really to believe that the trial court applies a less stringent, probable-success standard? At the very least, *Locke* demonstrates that if an injunction is

out of a sense of duty than anything else. The State filed a nine-page brief with only three pages devoted to analysis; it derided the injunctive remedy as "cumbersom[e] and ineffectua[l]." Brief for Appellants 6.

[3] In *Locke,* the Texas court wrote as follows:

"In accordance with the requirement that an independent determination of the obscene nature of the material is made by the reviewing court, we have viewed the films introduced as exhibits below, and we find them to be obscene by any reasonable definition. The films have practically no plot or story content. . . . Their appeal is wholly to the prurient interest in sexual conduct. They are obscene according to both the Texas statutory definition and the test approved by the United States Supreme Court in *Miller* v. *California.*" 516 S. W. 2d, at 954.

obtainable on such a slender showing, it is likely to enjoy a short life. It provides stark proof that only by abstaining from decision can we know whether Texas law is as the Court today "forecasts" it to be. See *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496, 499 (1941).[4] "So fragile a record is an unsatisfactory basis on which to entertain this action for declaratory relief." *Public Affairs Press* v. *Rickover,* 369 U. S. 111, 114 (1962).

In sum, I am unwilling to join the Court in "umpiring" an empty debate on a question of Texas law on which the Texas courts have not yet had an opportunity to speak. I therefore would dismiss the appeal.

MR. JUSTICE WHITE, with whom MR. JUSTICE REHNQUIST joins, dissenting.

The Court of Appeals invalidated Tex. Rev. Civ. Stat. Ann., Art. 4667 (a) (Vernon Supp. 1978), for what I understand to be two distinct reasons. Neither is valid, and to the extent that the Court falls into the same error, I respectfully dissent.

I

The Court of Appeals first characterized Art. 4667 (a) as a prior restraint on expression and invalidated it for this reason. I disagree. In my view, Art. 4667 (a), standing alone, intrudes no more on First Amendment values than would a criminal statute barring exhibition of obscene films in terms that would be valid under our cases.

The Court of Appeals' analysis of Art. 4667 (a), and that of this Court as well, glosses over what I take to be a crucial

---

[4] Equally dubious is the Court's second assumption that an exhibitor could be punished for disobeying a temporary injunction even if the motion picture shown is ultimately found nonobscene. It is an open question whether Texas in these circumstances would apply a rule analogous to that invoked in *Walker* v. *City of Birmingham,* 388 U. S. 307 (1967), to bar a defendant from raising a First Amendment defense in an action for contempt.

feature of that law. Before an exhibitor can be found to have violated an Art. 4667 (a) injunction, there must be two quite separate judicial proceedings. First, the plaintiff must obtain temporary or permanent injunctive relief against the habitual use of the subject premises for the commercial exhibition of obscene motion pictures. Second, the exhibitor must be found in criminal or civil contempt for violating the terms of the injunction. When these separate proceedings are carefully distinguished, it becomes apparent that neither individually nor jointly do they impose an impermissible burden on the exercise of First Amendment freedoms.

The initial injunctive proceeding is both substantively and procedurally sound under our precedents. Although the lack of an actual Art. 4667 (a) injunction in the present case gives a somewhat abstract and hypothetical tone to the analysis, it seems undisputed that any injunction granted under Art. 4667 (a) will be phrased in terms of the *Miller* v. *California,* 413 U. S. 15 (1973), definition of obscenity.[1] Hence an Art. 4667 (a) injunction would not by its terms forbid the exhibition of any materials protected by the First Amendment and would impose no greater functional burden on First Amendment values than would an equivalent—and concededly

---

[1] The en banc Fifth Circuit and the District Court both found that the term "obscene" in Art. 4667 (a) would be defined with reference to Tex. Penal Code Ann. § 43.21 (Supp. 1979). 587 F. 2d 159, 168, and n. 18 (1978); 404 F. Supp. 33, 39 (1975). See also *Locke* v. *State,* 516 S. W. 2d 949, 952 (Tex. Civ. App. 1974). Section 43.21, in turn, tracks nearly verbatim the *Miller* guidelines. The Fifth Circuit panel, in an aspect of its decision that was not repudiated by the Circuit en banc, held:

"The statute authorizes an injunction against the commercial manufacture, distribution or exhibition of *obscene* material only. . . . Were a Texas court to issue an overbroad injunction restricting nonobscene (and therefore protected) matter, it would exceed both its constitutional and its statutory authority." 559 F. 2d 1286, 1292 (1977) (emphasis in original). I do not read today's decision as disputing that under Texas law a valid Art. 4667 (a) injunction will be phrased in terms of a constitutionally adequate definition of obscenity.

valid—criminal statute. It simply declares to the exhibitor that the future showing of obscene motion pictures will be punishable.[2] It is true that an Art. 4667 (a) injunction is issued by a court of law while a criminal statute is imposed by a legislature. Yet this distinction seems irrelevant for First Amendment purposes.

Of course, an exhibitor who continues to show arguably obscene motion pictures after an Art. 4667 (a) injunction has issued against him does run the risk of being held in contempt. The Court implies that this danger renders Art. 4667 (a) unconstitutional because under *Walker* v. *City of Birmingham*, 388 U. S. 307, 317–321 (1967), an exhibitor could be held in contempt even if the film is ultimately found to be nonobscene. *Ante,* at 316, and n. 15. This conclusion is plainly wrong. As I have noted, and as the majority does not dispute, an Art. 4667 (a) injunction, temporary injunction, or temporary restraining order will be phrased in terms of a constitutionally adequate definition of obscenity. Therefore, contrary to the Court's inference, the motion picture's nonobscenity would clearly defeat any contempt proceeding brought under Art. 4667 (a), since if the film were not obscene, there would be no violation of the injunction.

There remains the question of whether the procedures employed at a contempt proceeding satisfy First Amendment requirements. I believe that they do. An exhibitor who shows a film arguably violative of the injunction would likely be tried for criminal contempt. At such a proceeding the exhibitor would have the constitutional rights of any criminal defendant. In particular, the State would bear the burden of proving beyond a reasonable doubt that the film which

---

[2] Indeed, the Art. 4667 (a) procedure provides greater protection to speech than would an equivalent criminal statute, since no one is punishable for violating an Art. 4667 (a) injunction unless a plaintiff has already gone to the considerable trouble of first obtaining a public nuisance injunction against the defendant.

allegedly violated the injunction was obscene.[3] Such procedures seem more than adequate to satisfy any procedural requirements that may exist with respect to criminal contempt proceedings in the First Amendment context.

The defendant might also be held in civil contempt if he refused to cease showing a specific motion picture proved to be obscene and contrary to the terms of the injunction. A civil contempt proceeding, unlike the original Art. 4667 (a) injunction, could result in jailing or fining the exhibitor until he ceased showing a film that had been publicly determined to be obscene. But such procedures would fully satisfy the requirements of our cases. Under Texas law, no one may be held in civil contempt unless he has received notice, in the form of an order to show cause, and a hearing on the charge against him. E. g., Ex parte Mouille, 572 S. W. 2d 60, 62 (Tex. Civ. App. 1978). The burden of bringing civil contempt charges is on the party seeking to suppress the exhibition; presumably, that party as plaintiff also bears the burden of showing noncompliance with the injunction, and in particular of proving that the exhibitor has shown obscene films. Since contempt proceedings are held before a court, a civil contempt order will not issue until there has been a final judicial determination that the defendant has exhibited and

---

[3] The Fifth Circuit majority expressed some doubt as to whether the State will have the burden of proof of showing that the film is obscene. 587 F. 2d, at 171, n. 23, citing Railroad Comm'n v. Sample, 405 S. W. 2d 338, 343 (Tex. 1966). The Sample case was a challenge to an order of the State Railroad Commission, not a contempt proceeding; it stands at most for the proposition that in Texas an order to show cause does not conclusively establish which party bears the burden of proof. The case does not establish that a party receiving an order to show cause why he should not be held in criminal contempt bears the burden of proof on any element of the contempt. To the contrary, obscenity is one element of the injunction, and if the State has the burden of showing violation of the injunction beyond a reasonable doubt, it follows that the State as a matter of due process has the burden of showing that the particular film shown was obscene.

continues to exhibit obscene films. And even then the exhibitor could purge his contempt by ceasing to exhibit such films.

The Court of Appeals and the Court, therefore, too easily equate an injunction against the exhibition of unnamed, obscene films with a typical "prior restraint." The Art. 4667 (a) injunction does, in a sense, "restrain" future speech by declaring punishable future exhibitions of obscene motion pictures. But in this weak sense of the term criminal obscenity statutes would also be considered "prior restraints." Prior restraints are distinct from, and more dangerous to free speech than, criminal statutes because, through caprice, mistake, or purpose, the censor may forbid speech which is constitutionally protected, and because the speaker may be punished for disobeying the censor even though his speech was protected. Those dangers are entirely absent here. An injunction against the showing of unnamed obscene motion pictures does not and cannot bar the exhibitor from showing protected material, nor can the exhibitor be punished, through contempt proceedings, for showing such material. The Art. 4667 (a) injunction, in short, does not impose a traditional prior restraint. On the contrary, it seems to me functionally indistinguishable from a criminal obscenity statute. Since an appropriately worded criminal statute is constitutionally valid, I believe that Art. 4667 (a) is valid also.

## II

The second reason given by the Court of Appeals for invalidating Art. 4667 (a) and apparently adopted by this Court, was the "failure to provide the safeguards mandated by" *Freedman* v. *Maryland,* 380 U. S. 51 (1965), and *Southeastern Promotions, Ltd.* v. *Conrad,* 420 U. S. 546 (1975). Those cases held that injunctions against showing allegedly obscene films are invalid unless (1) the burdens of instituting proceedings and of proving the material is obscene are on the censor; (2) the restraint prior to judicial review continues

only for a limited time and only to preserve the status quo; and, (3) there is an assurance of prompt final judicial determination of the films' obscenity.

I fail to see, however, how the *Freedman* restraints are relevant to the injunction contemplated by Art. 4667 (a). The *Freedman* restraints are wholly appropriate with respect to injunctions against specific, named films, but the injunction contemplated by Art. 4667 (a) is one directed against the future showing of *unnamed* obscene motion pictures. Because the films enjoined are unnamed, a final judicial determination of obscenity is logically impossible prior to or at the time the injunction issues. As I have said, an Art. 4667 (a) injunction no more restrains the showing of *particular* films than would a similarly worded criminal statute.

The Court of Appeals referred to the Texas Rules of Civil Procedure and declared that injunctions under those Rules could be issued without compliance with *Freedman* requirements. I would agree that the Texas procedures for enjoining the showing of named films must comply with the First Amendment requirements set out in our cases, but I fail to perceive why the inadequacy of the Texas procedures in this respect invalidates Art. 4667 (a), a separate statutory provision, contemplating only injunctions against unnamed films.

In this light, striking down Art. 4667 (a) is wholly gratuitous, and I respectfully dissent.