BOOKS, INC., an Iowa Corporation,
Plaintiff,

v.

POTTAWATTAMIE COUNTY,
IOWA, Defendant.

Civil No. 1–97–90011.

United States District Court,
S.D. Iowa,
Western Division.

Sept. 22, 1997.

Q. Yes.

Deborah D. Cunningham, Omaha, NE, Bradley J. Reich, Denver, CO, Richard A. Anderson, Dallas, TX, for Plaintiff.

James E. Gritzner, Joan H. Fletcher, Des Moines, IA, for Defendant.

## MEMORAMDUM OPINION AND RULING ON REQUEST FOR PRELIMINARY INJUNCTION

### MEMORANDUM AND RULING

PRATT, District Judge.

This case involves a county government's attempt to impose certain licensing and zoning requirements on "adult entertainment businesses." A company that wishes to establish such a business (1) argues that the ordinance is unconstitutional in several respects, and (2) requests that this court issue a preliminary injunction to block the enforcement of the ordinance. The court agrees that, as the evidence now stands, the ordinance is probably unconstitutional on several matters. The court, therefore, grants the prospective business's request for a preliminary injunction.

### I. Background:

On December 28, 1994, the Board of Supervisors of Pottawattamie County amended the Pottawattamie County Code by adding a new chapter entitled "Adult Entertainment Business—License Required." Pottawattamie County, Iowa, Code ch. 3.50(1994). This new chapter governs the unincorporated areas of the county and does not concern the City of Council Bluffs or other incorporated municipalities. The pertinent portion of the ordinance reads as follows:

ADULT ENTERTAINMENT
BUSINESS—LICENSE
REQUIRED

3.50.010 *DEFINITIONS:* For the purpose of this the following words, terms and phrases shall be deemed to have the following meanings:

.01 ADULT ENTERTAINMENT BUSINESSES: Shall includ[e] the following uses, activities or establishments:

a. ADULT BOOKSTORE: An establishment that has a substantial or significant portion of its stock in trade in, or has a segment or section devoted to the sale or display of books, magazines or other periodicals, videos, tapes, holographs or holograms, sexually oriented paraphernalia, movies, games, materials, visual images or similar devices, along or in combination with each other, all or any of which are distinguished or characterized by their emphasis on matter depicting, describing or relating to *specified sexual activities or specified anatomical areas*, as defined herein.

b. ADULT MINI MOTION PICTURE THEATER: An enclosed building with a capacity for less than fifty (50) persons used for presenting materials distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas, as defined herein, for observation by patrons therein.

c. ADULT MOTION PICTURE THEATER: An enclosed building with a capacity of fifty (50) or more persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to *specified sexual activities or specified anatomical areas, as* defined herein, for observation by patrons therein.

. . .

h. LIVE DANCING OR ENTERTAINMENT, such as go-go dancing, strip-tease acts and exotic dancing.

i. MODELING STUDIOS.

j. OTHER KINDRED OR RELATED USES, ACTIVITIES OR ESTABLISHMENTS, wherein the employees, *models, escorts* or other

contract workers are *nude or seminude.*

.07 MODEL: Any person who for consideration or gratuity appears either *nude or seminude,* to be viewed, photographed, sketched, drawn, sculptured; to dance; to provide reading or counseling sessions; for body painting; to deliver a service or in connection with the sale of merchandise; or to present materials distinguished or characterized by an emphasis on matter depicting, describing or relating to *specified sexual activities or specified anatomical areas.*

.08 NUDE or SEMINUDE: A state of dress in which any *specified anatomical area* is displayed.

.09 SPECIFIED ANATOMICAL AREAS: Any of the following:

a. Human genitals in a state of sexual stimulation or arousal;

b. Acts or representations of acts of human masturbation, sexual intercourse, sodomy, bestiality, oral copulation or flagellation;

c. Fondling or erotic touching of human genitals, pubic regions, buttock or female breast;

d. Excretory functions as part of or in connection with any of the activities set forth in subsections (a) through (c) above.

.50.020 *LICENSE:* It is unlawful for any person to engage in, conduct of carry on, in or upon any premises or real property located or situated within the unincorporated area of the *County,* the activities or an *adult entertainment business,* unless there has been granted to such person a valid license, pursuant to the provisions of this Chapter. A separate license shall be required for each location within the *County,* at which an *adult entertainment business* is to be established.

.50.030 *SITING CRITERIA:* No person shall cause or permit the establishment of any adult entertainment businesses within two (2) miles of the corporate limits of any municipality, nor within one (1) mile from another such business, any school, church, public park, public playground, public plaza, cemetery or area zoned for residential use. Measurements shall be taken on a direct line from the main entrance of such adult entertainment business to the point on the property line of such other business, school, church, public park, public playground, public plaza, or area zoned for residential use which is closest to the said main entrance of such adult entertainment business.

The "establishment" of an "adult entertainment business" shall include the opening of such business, or the conversion of an existing business to any of the uses defined as an "adult entertainment business".

.50.050 *LICENSE TERM:* The term of an adult entertainment business license shall be for a period of one (1) year; provided, however, that all licenses shall expire on June 30th of each year unless sooner suspended or revoked.

.50.060 *LICENSE RENEWAL:* An adult entertainment business license, issued pursuant to the provisions of this Chapter, which has not been suspended or revoked, may be renewed for a period not to exceed one (1) year upon written application to the *County Planning Director* made at least thirty (30) days prior to the expiration date of the current valid license. The application of renewal of a license shall contain all of the information required by Section 3.50.080 of this Chapter and shall be processed in accordance with the provisions of this Chapter.

.50.080 *APPLICATION FOR ADULT ENTERTAINMENT BUSINESS LICENSE—CONTENTS, RENEWALS, REQUIRED FEE:*

.01 Any person desiring to obtain a license or renew an existing license, to

operate an adult entertainment business, shall make application to the *County Planning Director* . . . .

.02 Neither the filing of an application for a license or renewal thereof, nor payment of an application or renewal fee, shall authorize the conducting of an *adult entertainment business* until such license is granted or renewed.

. . . . .

.05 The county planning department shall complete their certification that the premises is in compliance, or not in compliance, within twenty (20) days of receipt of the application by the *County Planning Director.*

.06 *The County Planning Director,* within thirty (30) days after receiving the application, shall grant the license or renewal license only if the *County Planning Director* finds that all of the following requirements have been met:

a. The required fees have been paid;

b. The application and location conforms in all respects to the provisions of this Chapter;

c. The applicant has not knowingly made a material misrepresentation of fact in the application;

d. The applicant fully cooperated in the investigation of the application; and

e. The applicant, manager or other person principally in charge of the operation of the business is at least eighteen (18) years of age.

.07 If the *County Planning Director* does not find that all of the requirements set forth in subsections (.06)(a) through (e) of this Section have been met, the *County Planning Director* shall deny the application for the license or renewal thereof. In the event the application for the license or renewal is denied by the *County Planning Director,* written notice of the denial shall be given to the applicant, specifying the ground or grounds for such denial. . . . Any applicant

who[se] application for an *adult entertainment business* license or renewal has been denied by the *County Planning Director,* may appeal such denial to the *Board of Supervisors* within twenty (20) days of such denial. Applicants may seek prompt judicial review of this administrative action in any court of competent jurisdiction.

.50.090 *PROHIBITED ACTIVITIES OF ADULT ENTERTAINMENT BUSINESS:*

. . . . .

.08 No employee, *escort, model,* or other contract worker or person shall expose their female or male genitals or buttocks.

. . . . .

.50.140 *PERMIT—RENEWAL APPLICATION:*

. . . . .

.07 If the *County Sheriff* does not find that all of the requirements set forth in subsection .06 of this section have been met, the *County Sheriff* shall recommend denial of the application for the permit or renewal thereof. . . . Any applicant whose application for an *escort/model* permit, or renewal thereof, has been denied by the *County Planning Director* may appeal such denial to the *Board of Supervisors* within twenty (20) days of such denial. Applicants may seek prompt judicial review of this administrative action in any court of competent jurisdiction.

.50.150 *UNLAWFUL ACTS:* It is unlawful for:

. . . . .

.07 The holder of an *escort/model* permit to expose female or male genitals or buttocks while on the premises of an *adult entertainment business.*

. . . . .

.50.190 *SUSPENSION OR REVOCATION OF A LICENSE OR PERMIT:* If the *County Planning Director* finds that any person holding an *adult entertainment business* license under the provisions of this Chapter has vio-

lated any of the provisions of this Chapter ... or if the *County Planning Director* finds that any person holding an *escort/model* permit ... violate[s] any provision of this Chapter ... the *County Planning Director* may suspend or revoke the license or permit.... If a timely appeal is filed, the suspension or revocation shall be stayed and shall become effective only upon the final decision of the *Board of Supervisors*. Otherwise, the suspension or revocation shall become effective after the timely appeal period [twenty days] has expired.

. . . . .

.50.210 *PENALTY*: Any person, firm, partnership, corporation, or any legal entity found guilty of a violation of any of the provisions of this Chapter shall upon conviction be subject to:

.01 A county infraction is a civil offense punishable in the following schedule of civil penalties:

| | | |
|---|---|---|
| A. | First Offense | $100 |
| B. | Second and Subsequent Offense(s) | $200 |

. . . . .

.07 In the event that any person violating any of the provisions contained in the Chapter is deemed guilty of a simple misdemeanor and upon conviction thereof, shall be punished by a fine not to exceed one hundred (100) dollars or be imprisoned for a term not exceeding thirty (30) days for each offense.

Pottawattamie County, Iowa, Code ch. 3.50 (emphasis in original).

On April 25, 1997, the plaintiff, Books Incorporated (hereinafter Books), filed a complaint in this court requesting a variety of relief from the County's new "Adult Entertainment Business" chapter. An amended complaint was filed May 1, 1997. Books requested, among other things, a preliminary injunction against the County. The preliminary injunction, as requested, would enjoin the County from enforcing the Chapter to the extent it violates the United States Constitution.

Books, by its own description, is currently engaged in the "adult entertainment business" and has one such business in the City of Council Bluffs, Iowa. Books stated that it "sells, exhibits and distributes books, magazines, newspapers, videotapes, cassettes and motion picture film fare."

At some point prior to its complaint, Books began to desire opening at least one business in the unincorporated portion of Pottawattamie County. According to Books, such business was and is to be "like the business it operates in Council Bluffs" except that it additionally "intends to offer live entertainment in the form of nude dancing." Books and the County agree that the Chapter is currently enforceable and that the Chapter would govern Books proposed business operation or operations.

After giving the parties the opportunity to engage in some limited discovery on issues relevant to Books' request for injunctive relief and requiring the parties to submit a joint stipulation of undisputed relevant facts, the court held a hearing on September 12, 1997. The matter of Books' request for a preliminary injunction against the County is now before the court for decision.[1]

## II. Discussion:

Books brought this action pursuant to 42 U.S.C. § 1983,[2] claiming that the County's ordinance violates its rights under the First and Fourteenth Amendments to the United

---

1. Although Books' complaint requests preliminary injunctive relief, declaratory relief, permanent injunctive relief, damages, and attorney fees, the court defers consideration of those matters beyond the scope of a preliminary injunction as inappropriate given the factual record before the court at this time.

2. Section 1983 reads: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress...."

States Constitution.[3] Books makes several claims in its motion for preliminary injunction. First, Books argues that several provisions of the "Adult Entertainment Business" chapter fail to provide adequate procedural safeguards.[4] Second, Books points to those provisions specifying distance requirements and claims they effectively ban its type of business from unincorporated Pottawattamie County and are not supported by any express justification.[5] Finally, Books argues that in making certain types of nudity unlawful, the County has unconstitutionally singled out Books' type of nude entertainment.[6] Books claims that it is entitled to a preliminary injunction against the County for all these harms because the aforementioned regulations intrude upon constitutionally protected free speech.

As mentioned, the motion for preliminary injunction is now properly before the court for decision. The court finds it has jurisdiction and that venue is proper. *See* 28 U.S.C. § 1343(3); Fed.R.Civ.P. 65. Furthermore, Books has standing to bring the above listed claims relating to the facial invalidity of certain provisions of the chapter even though it has yet to apply for or to be denied a license or permit. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).

■ Whether a preliminary injunction shall issue involves the consideration of four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981). A preliminary injunction is extraordinary relief and must be carefully considered. *See Cal-vin Klein Cosmetics v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir.1987). Nevertheless, this court will not hesitate to protect those subject to the government's likely infringement of rights guaranteed under the Constitution.

The court will individually address each of Books' legal claims as they relate to the four-factor test for preliminary injunctions set forth above.

### A. Whether Chapter 3.50 Provides Adequate Procedural Safeguards?

■ Books wishes to open a business that will offer nude dancing along with the sale and exhibition of books, magazines, newspapers, videotapes, cassettes, and motion picture films. At least a portion of all these endeavors will have sexually explicit content. To the degree these endeavors do not involve the obscene, they are constitutionally protected speech. *See Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959)(bookstores); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)(live theater performances); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)(motion picture theaters); *Schad v. Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)(nude dancing). Without doubt some sexually explicit material has very little of the value commonly associated with our right to freedom of speech; it may often reach into the pornographic rather than the artistic or the socially and politically significant. *Cf ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1419 (8th Cir.1994). But the polestar of our constitutional right to free speech is the desire to keep government out of those judgments and to leave them to the people as

---

**3.** The First Amendment applies to the states and their political subdivisions through the Fourteenth Amendment. *City of Ladue v. Gilleo*, 512 U.S. 43, 45 n. 1, 114 S.Ct. 2038, 2040 n. 1, 129 L.Ed.2d 36 (1994).

**4.** *See* §§ 3.50.080.07 (appeal from adult entertainment business license denial), 3.50.140.07 (appeal from escort/model permit denial), and 3.50.190 (appeal from suspension or revocation of license or permit).

**5.** *See* § 3.50.030 (regarding site requirements).

**6.** *See* §§ 3.50.090.08 (prohibiting certain acts at an adult entertainment business), 3.50.150.07 (making unlawful certain acts by escort/model permit holders while on premises of adult entertainment businesses).

individuals. *See West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943)("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."). As Justice Stewart wrote:

> Censorship reflects a society's lack of confidence in itself. It is a hallmark of an authoritarian regime. Long ago those who wrote our First Amendment charted a different course. They believed a society can be truly strong only when it is truly free. In the realm of expression they put their faith, for better or for worse, in the enlightened choice of the people, free from the interference of a policeman's intrusive thumb or a judge's heavy hand. So it is that the Constitution protects coarse expression as well as refined, and vulgarity no less than elegance. A book worthless to me may convey something of value to my neighbor. In the free society to which our Constitution has committed us, it is for each to choose for himself.

*Ginzburg v. United States,* 383 U.S. 463, 498, 86 S.Ct. 942, 956, 16 L.Ed.2d 31 (1966)(Stewart, J., dissenting).

This is not to say that all speech is protected under the First Amendment in exactly the same way. Each alleged infringement should be dealt with in consideration of its own specific background. Books here complains that the licensing scheme fails to restrain the County from abusing its own procedures by providing an unlimited time-period in which to make its decision final and reviewable. Under sections 3.50.080.07, 3.50.140.07, and 3.50.190 of the County's "Adult Entertainment" chapter, there is no time limit in which the County's Board of Supervisors must review and issue a final decision regarding the denial, suspension, or revocation of licenses and permits. Books further complains that even if such a final decision was made by the County, prompt judicial review and a determination of the propriety of the County's actions is not guaranteed. The chapter only states that

an aggrieved applicant or license holder may "seek prompt judicial review" and does not guarantee a prompt judicial *decision or determination. See* Pottawattamie County, Iowa, §§ 3.50.080.07, 3.50.140.07, and 3.50.190.

■ Books claims that these procedural protections are required by the First Amendment because the County's licensing scheme acts as a "prior restraint" of speech. Government regulation is a "prior restraint" if it makes the exercise of protected expression contingent upon obtaining permission from government officials. *See Near v. Minnesota,* 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357(1931). In this case, the County's requirement of a license clearly acts as a prior restraint.

■ Any regulation or licensing scheme that places a prior restraint on the exercise of protected expression carries " 'a heavy presumption against its constitutional validity.' " *Freedman v. Maryland,* 380 U.S. 51, 57, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1965)(quoting *Bantam Books v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963)). The presumed unconstitutionality of prior restraints is greater than that against laws that reserve judgment and punishment until after the speaker is allowed to speak. *See Vance v. Universal Amusement Co.,* 445 U.S. 308, 315–16, 100 S.Ct. 1156, 1161–62, 63 L.Ed.2d 413 (1980). Our Supreme Court has amply and repeatedly spelled out the rationale behind this country's distaste for prior restraints on speech:

> Behind the distinction [between prior restraints and subsequent penalties] is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

*Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559, 95 S.Ct. 1239, 1246–47, 43 L.Ed.2d 448 (1975); *see* Alexander M. Bickel, *The Morality of Consent* 61(1975)("Prior re-

straints fall on speech with a brutality and a finality all their own. Even if they are ultimately lifted they cause irremediable loss a loss in the immediacy, the impact, of speech.... A prior restraint, therefore, stops more speech more effectively. A criminal statute chills, prior restraint freezes."); *see also* Thomas Emerson, *The Doctrine of Prior Restraint,* 20 Law & Contemp. Probs. 648 (1955).

 The Supreme Court has clearly held that prior-restraint-licensing schemes, such as the one before this court, violate the guarantee of freedom of speech when they allow government officials unbridled discretion to grant or deny permission. *See FW/ PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223–27, 110 S.Ct. 596, 603–06, 107 L.Ed.2d 603 (1990). One aspect of discretion is the time limit imposed on decision makers to make their decisions and make them known. *Id.* at 226, 110 S.Ct. at 605 ("A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech.") In the *FW/PBS* case, the Court struck down the City of Dallas' "sexually oriented businesses" license scheme because it failed to expressly state a reasonable time limit for the city to make its final decision. *Id.* at 227, 110 S.Ct. at 605–06. In fact, both the Dallas ordinance and the Pottawattamie County ordinance fail to state any time limit for a final decision. *Id.* This court finds Books' complaint that the County's ordinance fails to provide adequate time constraints would likely succeed at trial.

 A second aspect of discretion that the *FW/PBS* Court pointed to is the right to

"prompt judicial review." *Id.* at 228, 110 S.Ct. at 606. Certainly the County's ordinance here expressly states that a denied applicant "may seek prompt judicial review" of the Board of Supervisors' final decision. *See* Pottawattamie County, Iowa, §§ 3.50.080.07, 3.50.140.07, and 3.50.190. Books argues, however, that the County must guarantee a "prompt judicial *determination*" and not just prompt review. There is no provision, however engineered, that allows a County to force a final determination by its state or federal courts. Such a provision would clearly be beyond a county's power.[7] It might be said that a county could do more than simply mouth the words "an applicant may seek prompt judicial review" in order to provide for a prompt review. For example, the county might waive or limit time restraints for filing the administrative record, responsive pleadings, and memoranda.[8] *See 11126 Baltimore Blvd., Inc. v. Prince George's County,* 58 F.3d 988, 1001 n. 18 (4th Cir.1995). Books, however, does not present this question and this court will not consider it further. Instead, Books asks the County to do the impossible or, at least, speak ineffectually. This court finds that such an argument is not likely to succeed at trial.

As previously stated, the court here is concerned with the merits of the case only in so far as they may meet or fail to meet the four-factor test for preliminary injunctions set forth in the *Dataphase* case. In summary, the court finds (1) that sections 3.50.080.07, 3.50.140.07, and 3.50.190 are likely to be struck down at trial for failure to set

---

7. It is not clear what, if anything, the *FW/PBS* Court meant by including the requirement of "prompt judicial review" in a municipal ordinance. The Eighth Circuit Court of Appeals has not interpreted this requirement. Other circuits appear split on whether the Court meant to require a "prompt judicial *determination.*" *See 11126 Baltimore Blvd., Inc. v. Prince George's County,* 58 F.3d 988 (4th Cir.1995); *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220 (6th Cir.1995); *TK's Video, Inc. v. Denton County,* 24 F.3d 705 (5th Cir.1994); *Graff v. City of Chicago,* 9 F.3d 1309 (7th Cir.1993); *Jews for Jesus, Inc. v. Massachusetts Bay Trans. Auth.,* 984 F.2d 1319 (1st Cir.1993). This court finds those courts' reasoning which would require a county to attempt the impossible, namely forcing a state or

federal court to decide, to be unreasonable and unpersuasive.

8. The Court, in *FW/PBS,* failed to produce a majority opinion on the question of whether a licensing board must "bear the burden of going to court" and "the burden of proof once in court." *FW/PBS,* 493 U.S. at 229, 110 S.Ct. at 606. Books does not request such burdens be placed on the County in this case. Books' brief is unclear if it is arguing that a "stay pending appellate review" provision should be required. Any provision of the Pottawattamie Code that purports to limit court ordered stays is invalid. *See National Socialist Party v. Village of Skokie,* 432 U.S. 43, 44, 97 S.Ct. 2205, 2206, 53 L.Ed.2d 96 (1977).

reasonable time constraints; and (2) that, as presented, Books argument that the County must include a provision guaranteeing a final judicial determination is not likely to succeed at trial. The court has therefore answered the third *Dataphase* factor, likelihood of success on the merits, with respect to Books' procedural safeguards claims.

Given the exalted status of the First Amendment in our law, the other *Dataphase* factors are relatively easy to analyze. First, as has often been stated, the loss of the protected right to free speech, even if momentary, constitutes an irreparable harm. *See, e.g., Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976)("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Marcus v. Iowa Public Television,* 97 F.3d 1137, 1140 (8th Cir.1996); *Paulsen v. County of Nassau,* 925 F.2d 65, 68 (2d Cir.1991). Second, the balance of equities favors the exercise of Books constitutionally protected right to expression over the undeclared interests of the County in the operation of an ordinance that provides unbridled discretion and is a very probable violation of Supreme Court precedent. Third, the enforcement of the Constitution is clearly in the public interest. *Kirkeby v. Furness,* 52 F.3d 772, 775 (8th Cir.1995). The court holds, therefore, that a preliminary injunction must issue enjoining the enforcement of Chapter 3.50 of the Pottawattamie County Code ("Adult Entertainment Business").

**B. Whether the Ordinance Serves a Substantial Governmental Interest and Provides Alternative Avenues of Communication?**

■■■■■■■■ Turning to Books' challenge to the "siting" requirements in section 3.50.030 (two miles from any city limits; one mile from private residence, church, public playground, etc.), the Supreme Court has recognized:

> The power of local governments to zone and control land is undoubtedly broad and its proper exercise is an essential aspect

of achieving a satisfactory quality in both urban and rural communities. But the zoning power is not infinite and unchallengeable; it must be exercised within constitutional limits.

*Schad,* 452 U.S. at 68, 101 S.Ct. at 2182 (quotation marks omitted). Where protected First Amendment rights are at stake, zoning regulations cannot claim "talismanic immunity from constitutional challenge." *Young,* 427 U.S. at 75, 96 S.Ct. at 2454-55 (Powell, J., concurring). A government that seeks to specially regulate "adult establishments" or "sexually explicit material" must come forth with at least some constitutional and substantial motivating interest unrelated to the suppression of speech. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 567-69, 111 S.Ct. 2456, 2461-62, 115 L.Ed.2d 504 (1991); *Cf United States v. O'Brien,* 391 U.S. 367, 376-77, 88 S.Ct. 1673, 1678-79, 20 L.Ed.2d 672 (1968).

■■■■■ The record before this court is totally devoid of any purported justification whatsoever, save oblique references by the County's attorney to a separate action between the two parties and to the "text of the statute." There is no statement of purpose in the ordinance, no information via studies or public testimony referred to, and no affidavit from any County official from which we may infer a purpose. Looking at the "text of the statute," and without knowing whether the particular regulations constitute an outright ban in effect, it is impossible for this court to find that the County could meet its burden at trial of showing a substantial governmental interest unrelated to the suppression of speech.[9] In *Barnes,* Justice Souter's essential concurrence did not imply a proper motivation out of whole cloth, but instead recognized a purpose which was bottomed on legislative findings regarding the effect of pornography recognized in Indiana statutory provisions. *See Barnes,* 501 U.S. at 582, 111 S.Ct. at 2468-69 (Souter, J., concurring)(relying on petitioner's citation to lower court's discussion of Indiana statute). The Eighth Circuit has, subsequent to

---

9. The court notes that Books acknowledges the zoning provisions related to 3.50.030 "must be analyzed as a time, place and manner restric-

tion." (Plaintiff's Br. at 18.) Apparently, therefore, Books does not contest "content neutrality" at this point.

*Barnes,* clearly stated that "lip service" to a "legitimate governmental interest" is "not enough." *Holmberg v. City of Ramsey,* 12 F.3d 140, 143 (8th Cir.1993). Here there is not even any "lip service." This court finds that, if the trial were held upon the evidence before it, then Books would be likely to succeed in its argument that the "Adult Entertainment Business" chapter does not serve a substantial governmental purpose.

There is also no evidence that any space is available for an adult entertainment business to function anywhere in unincorporated Pottawattamie County. Given the extreme spacial prohibitions apparent on the face of the ordinance, this court cannot say the ordinance provides any alternative avenues of communication. *Id.* If a trial were held on this evidence, Books would likely prevail on its claim that there are insufficient alternative avenues provided for in the ordinance.

For reasons stated in the previous section of this opinion, the court finds the factors set forth in *Dataphase* to weigh in favor of issuing Books requested preliminary injunction.

**C. Whether the County's Prohibition of Nude Entertainment at Adult Entertainment Businesses is Content–Based and Violative of the Equal Protection Clause?**

 Books argues sections 3.50.090.08 and 3.50.150.07 are content-based prohibitions that violate the constitutional guarantee of free speech and equal protection of the law. U.S. Const. amends. I, XIV. The contested sections of the Pottawattamie County Code prohibit the exposure of "female or male genitals or buttocks" at any "adult entertainment business." They do not, by their terms, apply to any other venue for entertainment involving nudity or to nudity in general. Books refers to an instructive passage from a recent case discussing the singling out of nudity involved in erotic dancing at "adult establishments" from other venues for entertainment involving nudity, such as the opera or the theatre:

> The only logical distinction of legal relevance here is that the "erotic message" displayed by the dancers at a cabaret, dance hall, bar, tavern, discotheque or restaurant, which is arguably not presented,

or at least not as strongly presented in Strauss's *Dance of the Seven Vails* or in *Oh Calcutta,* is more offensive to the City of Schenectady's legislators. In the end, the City's position distills down to the assertion that nude dancing in the seven enumerated establishments based on their distasteful erotic message, which the City finds objectionable; there is no other plausible distinction justifying disparate treatment in furtherance of the City's protection of order and morality.

> This is precisely the kind of censorship, however, against which the First Amendment aims to guard. "When the government, acting as a censor, undertakes selectively to shield the public from some kinds of [expression] on the grounds that they are more offensive than others, the First Amendment strictly limits its power." *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975). As Justice Harlan eloquently stated in *Cohen v. California,* 403 U.S. 15, 25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971), "we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual." Although we may find the expression inherent in nude dancing to be objectionable, "[i]f there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 491 U.S. 397, 414, 109 S.Ct. 2533, 2545 [105 L.Ed.2d 342].

> Consequently, Schenectady's attempt to ban nude dancing in pursuit of its aforementioned interest is a forbidden interference because it seeks to withdraw this nonobscene and protected communication from the realm of public discourse only at the seven enumerated establishments.

*Nakatomi Investments, Inc. v. City of Schenectady,* 949 F.Supp. 988, 999–1000 (N.D.N.Y.1997). We agree with the *Nakatomi* court's analysis especially in light of the utter lack of alternative justifications presented by the County. Whether analyzed

under the First Amendment or the Fourteenth Amendment's Equal Protection Clause, such a content-based ban would not likely survive a court's strict scrutiny.

For reasons stated in the previous sections of this opinion, the court finds the factors set forth in *Dataphase* to weigh in favor of issuing Books requested preliminary injunction.

### ORDER

Based upon the records, files, and proceedings herein, and the briefs and arguments of counsel, **IT IS ORDERED** that:

1. Books, Inc.'s Motion for Preliminary Injunction is **GRANTED** as set forth in the court's memorandum opinion. Until further order of this court, Pottawattamie County is hereby enjoined from taking any action, civil or criminal, to enforce the provisions of Pottawattanie County Code Chapter 3.50.