RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0354P (6th Cir.)
File Name: 01a0354p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――――

POLARIS AMPHITHEATER
CONCERTS, INC.,
       *Plaintiff-Appellant,*

    *v.*

CITY OF WESTERVILLE, et al.,
       *Defendants-Appellees.*

No. 00-4076

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00194—James L. Graham, District Judge.

Argued: May 3, 2001

Decided and Filed: October 3, 2001

Before: JONES and DAUGHTREY, Circuit Judges;
ECONOMUS, District Judge.

―――――――――――――

[*] The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Craig Pinkus, LOWE, CRAY, STEELE & DARKO, Indianapolis, Indiana, for Appellant. Steven F. Pflaum, MCDERMOTT, WILL & EMERY, Chicago, Illinois, Elizabeth L. Schuster, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellees. **ON BRIEF:** Craig Pinkus, LOWE, CRAY, STEELE & DARKO, Indianapolis, Indiana, Benson A. Wolman, Susan B. Gellman, WOLMAN, GENSHAFT & GELLMAN, Columbus, Ohio, for Appellant. Steven F. Pflaum, MCDERMOTT, WILL & EMERY, Chicago, Illinois, Elizabeth L. Schuster, Arthur James Marziale, Jr., OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellees.

---

**OPINION**

---

NATHANIEL R. JONES, Circuit Judge. Polaris Amphitheater Concerts, Inc. ("Polaris") appeals the judgment of District Judge Graham that the ordinance enacted by the City of Westerville, Ohio ("Westerville") to control the impact of excessive noise on residential communities violates none of the rights guaranteed Polaris under the Federal or Ohio Constitution. Polaris raises in this appeal numerous constitutional challenges to the noise ordinance, but many of them have been acknowledged and thoroughly exhausted in the Memorandum Opinion of the District Court. We therefore limit our discussion here to the claim that the enforcement provision of the ordinance is unenforceable as a prior restraint on speech in violation of the First Amendment to the U.S. Constitution. We conclude that Polaris misconstrues the nature of a prior restraint, and for the reasons set out below, we **AFFIRM**.

drawn standards of the exact type at work in the Westerville ordinance. In *Saia v. New York*, 334 U.S. 558, 68 S. Ct. 1148 (1948), the Court held unconstitutional a New York City ordinance that prohibited the use of sound-amplifying equipment in public places without the permission of the chief of police. Much like *Cantwell*, the key factor in *Saia* was that the law, although content-neutral, prescribed no standards for the exercise of official discretion. The Court stated that the "statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they may be adjusted." *Id.* at 560. It went on to conclude that "[n]oise can be regulated by regulating decibels." *Id.* at 562.

The Westerville ordinance is narrowly drawn to regulate decibels at certain hours, does not burden the content of protected speech, or permit unfettered official discretion. For these reasons, we hold that the ordinance does not authorize the city to suppress speech in advance of its expression. As such, it is not an unconstitutional prior restraint. Finding that the ordinance is constitutional in all other respects, we **AFFIRM** the judgment of the district court denying Polaris' claim for declaratory and injunctive relief.

*It is so ordered.*

## I. BACKGROUND

Polaris owns and operates an open air amphitheater located approximately 12 miles north of the City of Columbus, Ohio near the Westerville city line. The amphitheater sits on 83 acres and seats over 20,000 people. Polaris regularly hosts a variety of events at the amphitheater, but the mainstay is popular music performed by well-known bands. In connection with these musical events, it is customary for the artists to maximize the quality, mix, and volume of sound by means of electronic sound-amplifying equipment.

The amphitheater opened for business in 1994, and immediately generated a great number of complaints from Columbus and Westerville residents about the noise level at the facility. According to the Westerville City Manager, noise from the Polaris Amphitheater has been the largest single source of citizen complaints during his 24 year tenure as a city employee. Polaris undertook various steps to reduce the impact of noise on nearby residential communities, including retaining prominent acoustical consultants to recommend ways to prevent sound leakage. On the advice of its experts, Polaris installed a state of the art sound control system at the amphitheater which continuously monitors sound levels during performances and includes a display of green, yellow and red lights to warn when sound levels are inappropriately high. Notwithstanding these efforts, complaints about the noise level at the amphitheater persisted.

Later that year, prompted by concerns about Polaris, the Westerville City Council enacted an ordinance to control excessive noise from electronically amplified sound. On April 25, 2000, Westerville adopted Ordinance No. 00-19 which is the version that became the subject of this proceeding. The power of Westerville to adopt a noise ordinance regulating the conduct of Polaris, a facility located in nearby Columbus, Ohio is conferred by Ohio Revised Code ("O.R.C.") Section 715.49(B). The Ohio legislature enacted this statute in 1994 to authorize adjacent municipalities to

permit the application and enforcement of their noise ordinances to noise emanating from the other city. In 1999, Westerville and Columbus entered into such an agreement for the reciprocal enforcement of noise agreements.

The ordinance's regulatory approach is to prohibit beyond certain levels (measured in decibels) sound volume produced by electronic amplifying equipment. The ordinance specifies that the decibel limits are in effect only during the evening and nighttime hours.[1] Of particular note in this appeal is that, among other remedies, the city is authorized to take legal action to enjoin repeated violations of the ordinance's decibel limits.[2] Polaris claims that this provision of the ordinance imposes a prior restraint on speech in violation of the First Amendment. The District Court rejected this and each one of the several other constitutional challenges that Polaris lodged against the noise ordinance. In this appeal, we give the prior restraint issue our careful consideration.

---

[1] The ordinance defines "evening" as the period from 7:00 p.m. until 10:00 p.m. during the weekend or any day before a legal holiday, and from 7:00 p.m. until 9:00 p.m. during any weekday that is not the day before a legal holiday. "Night" is defined as the period of time from 10:00 p.m. until 7:00 a.m. during a weekend or any day before a legal holiday, and from 9:00 p.m. until 7:00 a.m. during any weekday that is not the day before a legal holiday. Westerville Ordinance No. 00-19, §§ 518.01(f), 518.01(h) (2000).

[2] The enforcement provision reads, in pertinent part, as follows:

"An action for injunctive relief may be brought by the City of Westerville in a court of competent jurisdiction against any person who has violated, and is reasonably likely to violate again, any provision of this chapter." Westerville Ordinance No. 00-19, § 518.01(b) (2000).

publications, distribution of literature 'of any kind' in a city of 18,000."

*Id.* at 418-19. By contrast, the Westerville noise ordinance leaves entirely untouched the substance of what performers choose to say. Therefore, we conclude that the chief concern which animates the doctrine of prior restraint – the fear of censorship and thought control – is not raised by the ordinance's content-neutral regulation of noise.

We hasten to add, however, that lack of content-neutrality is not the only feature that identifies a system of prior restraint. A content-neutral regulation that "[places] unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 756, 757, 108 S. Ct. 2138, 2144 (1988). In other words, when a regulation fails to place appropriate limits on the discretion of public officials to administer the law in a manner that is abusive of speech, the result should be no different than if the law had brazenly set out to discriminate on the basis of content. At stake is the risk that in the absence of "narrowly drawn, reasonable and definite standards for the officials to follow," the law invites opportunities for the unconstitutional suppression of speech. *Niemotko v. Maryland*, 340 U.S. 268, 271, 71 S. Ct. 325, 327 (1951); *Kunz v. New York*, 340 U.S. 290, 295, 71 S. Ct. 312, 315 (1951).

This case does not present such a risk. Unlike other laws the courts have struck down as prior restraints, the Westerville ordinance does not leave open important questions of enforcement to official discretion. *See Cantwell v. Connecticut*, 310 U.S. 296, 60 S. Ct. 900 (1940) (law that prohibited discussion of religious matters in public places was held unconstitutional where what constituted religion was left to official discretion). In fact, in at least one case involving the regulation of amplified sound, the Supreme Court has expressed a preference for content-neutral and narrowly-

content-neutrality. The essence of the prior restraint doctrine is censorship – a system in which bureaucrats screen material and remove from it parts that are considered too harmful or offensive for public consumption. The key to *Ward* was that the object of the New York City guidelines was not to police the content of performances at the amphitheater, but to eliminate excessive noise from unregulated amplified sound. *See id.* at 795. In that respect, the Westerville ordinance presents a case almost identical to *Ward*. The function of the noise ordinance is also to control the impact of excessive noise on residential communities. The ordinance is entirely content-neutral, regulating only the time, place, and manner in which artists may engage in expressive activity at the Polaris Amphitheater.

The perfect contrast to *Ward* that further illustrates the importance of content-neutrality in the doctrine of prior restraint is *Organization For A Better Austin v. Keefe*, 402 U.S. 415, 91 S. Ct. 1575 (1971). Unlike *Ward*, the Court in *Keefe* confronted a government order that discriminated on the basis of content. In that case, a community organization in the Austin neighborhood of Chicago launched a leaf-letting campaign to stop the "blockbusting" practices of a local real estate broker. The organization contended that the broker "aroused the fears of the local white residents that Negroes were coming into the area and then, exploiting the reactions and emotions so aroused, was able to secure listings, and sell homes to Negroes." *Id.* at 416. The Supreme Court reversed a court order enjoining the organization from distributing pamphlets critical of the broker's business practices. Rejecting arguments that the organization's activities invaded the broker's right to privacy, the Court held that

"[u]nder *Near v. Minnesota* . . . the injunction, so far as it imposes a prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights. Here, as in that case, the injunction operates, not to redress alleged private wrongs, but to suppress, on the basis of [the content of] previous

## II. ANALYSIS

The term "prior restraint" describes administrative and judicial orders that block expressive activity before it can occur. *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 2771 (1993). Under a system of prior restraint, the lawfulness of speech turns on the advance approval of government officials. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151, 89 S. Ct. 935, 939 (1968). In that vein, laws that impose a prior restraint on free speech have been disfavored by the courts as tantamount to censorship and thought control. *See Near v. Minnesota*, 283 U.S. 697, 713, 51 S. Ct. 625, 630 (1931).

Polaris' argument that the Westerville noise ordinance is an unconstitutional prior restraint centers on the ordinance's enforcement clause. Section 518.08(b) authorizes the city to take legal action to enjoin repeated violations of the ordinance's decibel limits. According to Polaris, the provision for injunctive relief acts as a prior restraint because it would allow the suppression of lawful speech, i.e., future concerts at Polaris, solely on the basis of past noise violations. Polaris maintains that this feature places the Westerville ordinance in the same category as other regulations the courts have struck down as prior restraints.

Injunctions are indeed at the "core of the prior restraint doctrine." *See* Vincent A. Blasi, *Toward a Theory of Prior Restraint: The Central Linkage*, 66 Minn. L. Rev. 11, 15 (1981). And, Polaris is correct that this court and others have invalidated laws that prohibit future expressive activity in retaliation for past unlawful conduct. In *City of Paducah v. Investment Entertainment*, 791 F.2d 463 (6th Cir. 1986) we invalidated an obscenity ordinance that authorized a city to revoke the business license of a defendant that sold or publicly exhibited obscene materials. We found objectionable the risk that an entire business could be halted for a single violation, thereby preventing the future sale or exhibition of material which might be entirely within the

ambit of First Amendment liberty. *See id*. at 470. Similarly, the Fifth Circuit in *Universal Amusement Co. v. Vance*, 587 F.2d 159 (5th Cir. 1978); *aff'd* 445 U.S. 308, 100 S. Ct. 1156 (1980), held unconstitutional a Texas statute which authorized state judges to enjoin the future exhibition of films by a business that had shown obscene films in the past. The court observed that the effect of closing – even temporarily – a business would preclude the exhibition of films that might not be obscene. *See id*. at 169. These cases both illustrate the principle that where a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and as such violates First Amendment protections against prior restraint of speech.

Westerville's first response is that the prior restraint claim Polaris raises has been mooted by subsequent legislation in the Westerville City Council. While the parties were litigating this appeal, Westerville amended the noise ordinance to add the following language:

"The City may seek injunctive relief forbidding violations of the decibel limits in this chapter, but shall not seek relief preventing anyone from creating, playing, reproducing, furnishing, or transmitting electronically amplified sound, or from planning, promoting, scheduling or hosting any event that creates, plays, reproduces, furnishes, or transmits electronically amplified sound."

Westerville Ordinance No. 01-51, § 1 (2001) (amending Westerville Codified Ordinances, § 518.08(b)(1)). Westerville maintains that the addition of this new language clarifies the city's intent to make use of the injunctive remedy to enforce the ordinance's decibel limits, not to preempt musical events before they can occur. This much seems to be right. The new wording leaves no room to argue that Westerville can pursue a court order to enjoin an event at the amphitheater even before a noise violation has occurred. Still, *Paducah* and *Vance* demonstrate that in some cases laws

that authorize a temporary or permanent cessation of unlawful activities can operate as a prior restraint when they also bottle up protected speech.

The cases Westerville cites do not assist the argument that the prior restraint claim is moot. *See Equality Foundation of Greater Cincinnati, Inc. v. City of Cincinnati*, 54 F.3d 261, 271 (6th Cir. 1995), *vacated on other grounds*, 518 U.S. 1001, 116 S. Ct. 2519 (1996) (vagueness challenge to ordinance was mooted by amendment deleting the language in question); *United Bldg. & Const. Trades Council v. Mayor and Council of City of Camden*, 465 U.S. 208, 213, 104 S. Ct. 1020, 1024 (1984) (equal protection challenge was mooted by amendment to ordinance deleting one-year residency requirement). Unlike these cases, the Westerville amendment does not remove the language that gives rise to the constitutional challenge. Rather, the language continues to authorize injunctive relief. We must conclude, therefore, that the prior restraint claim is not moot.

Westerville next argues that Polaris flat out misconstrues the nature of a prior restraint. The city argues that the Supreme Court's decision in *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746 (1989) forecloses any argument that the Westerville noise ordinance is an unconstitutional prior restraint. In that case, the Supreme Court upheld against a First Amendment challenge certain guidelines adopted to control the volume of amplified music at a New York City amphitheater. Under the guidelines, the city employed a sound technician who would be on hand at all performances to control the volume and mix of amplified sound. The respondents in *Ward* argued that this arrangement empowered the city to screen, distort, or altogether shut off speech in advance of its expression, and as such, should be invalidated as a prior restraint in violation of the First Amendment.

The Supreme Court disagreed, and identified perhaps the most important characteristic that sets apart legitimate government regulations from impermissible prior restraints: