any disclosure of their names, the guards already face the greater risk that someone might simply shadow them on their way home from work.

Moreover, the plaintiffs do not provide support for the assertion that the guards' addresses and social security numbers could be found in the public domain once their names are known. One's telephone number need not be listed in the telephone directory, and the plaintiffs do not explain the mechanism by which the guards' names could be used to discover their home addresses or social security numbers. The present case is therefore distinguishable from *Kallstrom*, in which the police officers' addresses and those of their immediate family members were at issue. *Kallstrom*, 136 F.3d at 1059. Because the record does not support the plaintiffs' claim that the guards' names would appreciably increase the security risk that the guards currently face, the plaintiffs have not carried the "heavy burden of showing justification for the imposition" of the injunction as a prior restraint on Betzold's speech. *New York Times Co.,* 403 U.S. at 714. We therefore conclude that the district court erred in issuing the SPI.

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court, **DISSOLVE** the injunction against Betzold, and **REMAND** the case for further proceedings consistent with this opinion.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0224P (6th Cir.)
File Name: 02a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

COUNTY SECURITY AGENCY, et al.,

    *Plaintiffs-Appellees,*

    *v.*

THE OHIO DEPARTMENT OF COMMERCE,

    *Defendant-Appellee,*

    *v.*

MICHAEL J. BETZOLD,

    *Intervenor-Appellant.*

No. 00-3620

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 00-00506—John M. Manos, District Judge.

Argued: March 19, 2002

Decided and Filed: July 9, 2002

Before:  SILER and GILMAN, Circuit Judges; HEYBURN, Chief District Judge.[*]

---

**COUNSEL**

**ARGUED:**  Philip Hostak, BREDHOFF & KAISER, Washington, D.C., for Appellant.  Adam P. Hall, FROST, BROWN & TODD, Cincinnati, Ohio, for Appellees. **ON BRIEF:**  Philip Hostak, Robert Weinberg, BREDHOFF & KAISER, Washington, D.C., for Appellant.  Adam P. Hall, Matthew C. Blickensderfer, Thomas D. Amrine, FROST, BROWN & TODD, Cincinnati, Ohio, for Appellees.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Michael J. Betzold, a freelance journalist, appeals a temporary restraining order (TRO) and superseding preliminary injunction preventing him from disclosing information contained in the registration records of private security guards working at the site of an ongoing labor dispute.  Betzold received these records after requesting them from the Ohio Department of Commerce (ODC), although the ODC now takes the position that only law enforcement agencies are entitled to such information under Ohio law.  The district court, Betzold argues, issued the TRO and preliminary injunction in violation of Rule 65 of the Federal Rules of Civil Procedure.  Betzold also claims that the preliminary injunction should not have issued because it is a prior restraint of speech, thus violating his rights under the First Amendment.  For the reasons set forth below, we **REVERSE**

[*] The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

public concern.  *See, e.g., New York Times Co.,* 403 U.S. at 714 (holding that the federal government was not entitled to an injunction preventing the *New York Times* and the *Washington Post* from publishing the "Pentagon Papers," which were classified at the time that they were obtained by the newspapers).  Betzold's speech is entitled to this strong protection because he is a journalist who intends to write an article pertaining to a major labor dispute—a matter of public concern implicating "the core purposes of the First Amendment." *Bartnicki v. Vopper*, 532 U.S. 514, 533-34 (2001) (subjecting a wire-tap statute to heightened scrutiny when enforced against the "publication of truthful information of public concern" as opposed to the publication of private information).

There are two classes of information listed in the injunction: (1) the guards names, and (2) all "other information" concerning the guards.  The "other information," given that the ODC is no longer willing to make further disclosures, includes the security guards' application dates, dates of hire, registration status, and whether they came from out of state.  This information is of public concern because it pertains to the actions of both the government and AK Steel with respect to the labor dispute.  It poses no discernible security threat to the guards.  Betzold's free speech interest in disclosing this "other information" therefore outweighs the guards' interest in their personal security.

The security guards' names, on the other hand, are not matters of public concern because, by Betzold's own admission, they have "no news value."  Thus, Betzold's right to disseminate the very pieces of information which are most likely to threaten the guards' personal security—their names—weighs least heavily in favor of Betzold's asserted interests.  But the threat that the guards currently face from protesters at AK Steel's Mansfield facility is not likely to be enhanced to any appreciable degree if the protesters were to learn the guards' names, particularly given that such a disclosure would not couple names with faces.  Even without

rights. In light of the ODC's current position against further disclosures of the guards' registration information to persons other than police officers, the plaintiffs emphasize that the registration records already obtained by Betzold contained the guards' names.  If the guards' names are disclosed, the plaintiffs argue, then the guards' telephone numbers, addresses, and social security numbers would become discoverable from sources in the public domain.  The plaintiffs, however, placed no proof in the record as to how this additional information could be discovered.

This court has described the right to personal security as follows:

> As far back as 1891, the Supreme Court recognized that "[n]o right is held more sacred, or is more carefully guarded . . . than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."

*Kallstrom v. City of Columbus,* 136 F.3d 1055, 1062 (6th Cir. 1998) (enjoining the release of the personnel files containing the names and addresses of police officers who had testified against members of a violent gang, as well as the names and addresses of the officers' immediate family members, without providing prior notice to the officers) (quoting *Union Pac. Ry. v. Botsford*, 141 U.S. 250, 251 (1891)).  Given the violent history of the labor dispute and the fact that physical hostility has already been directed at the guards, the maintenance of the security guards' privacy is necessary to protect their constitutional right to personal security.  We must thus ask whether the threat to the safety of the security guards posed by Betzold's potential dissemination of their "names and other information" contained in the documents is sufficiently grave so as to justify the SPI's restriction of Betzold's speech.

Great protection is afforded by the First Amendment to the press's freedom to publish information relating to matters of

the judgment of the district court, **DISSOLVE** the injunction against Betzold, and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

This case arises from a labor dispute at AK Steel Corporation's Mansfield, Ohio facility.  AK Steel locked out its unionized workforce in September of 1999, and hired County Security Agency, Inc. (CSA), an Ohio corporation, to provide security in the often-violent dispute.  Specific incidents of violence have included the placing of pipe bombs on AK Steel's premises, slashed tires, bricks thrown through windows, pigs' heads placed on managers' property, and security guards beaten as they escorted replacement workers to the facility.

Under Ohio law, all security guard companies operating in the state must obtain registration applications from their guard employees and promptly file these documents with the ODC. Ohio Rev. Code § 4749.06(A), (C).  A Mansfield ordinance in effect prior to September of 1999 required security guard employees to file copies of their registration applications with the Mansfield police department.  Registration applications contain the security guards' names, social security numbers, home addresses, home telephone numbers, dates of birth, fingerprints, and photographs.  The district court declared the ordinance unconstitutional in January of 2000, and permanently enjoined Mansfield from enforcing it.  Among the district court's grounds for finding the ordinance unconstitutional was that it violated the security guards' constitutionally protected right of privacy.

Following the district court's decision on this issue, the local affiliate of the United Steelworkers of America (the Union) hired Betzold and two others as freelance journalists to investigate and write a report that could form the basis for a published article about the companies providing security guards and hiring replacement workers in labor disputes.

Betzold then telephoned the ODC, which is required by law to perform required background checks and maintain records on each licensed and registered security company and guard. Ohio Rev. Code § 4749.03.

Upon being informed by the ODC that the applications of security guard companies doing business in Ohio were public records available for public inspection, Betzold submitted a written request to the ODC on February 10, 2000 to examine any public information from the registration records of CSA. The ODC then faxed Betzold documents that contained the names of the security guards, as well as their application dates, dates of hire, registration status, and whether they came from out of state. Notably, these documents did not contain the security guards' social security numbers, home addresses, telephone numbers, dates of birth, fingerprints, or photographs.

From the information he received, Betzold determined that CSA hired most of its guards from outside of Ohio and that the ODC had not expeditiously carried out the required background checks on the guards. Betzold considered this information to be "of interest to the public in Mansfield and in Ohio." He asserted, on the other hand, that he did not intend to publish the security guards' names, because there would have been "no news value" in doing so. With the information he obtained from the ODC, Betzold began to prepare an article for publication that focused on the backgrounds of the security guards and the impact that the security companies have on the communities in which they operate.

On February 23, 2000—one week after the ODC honored Betzold's request—CSA and AK Steel (the plaintiffs) filed suit against the ODC pursuant to 42 U.S.C. § 1983, alleging that the divulging of information regarding the private security guards would violate the plaintiffs' constitutional rights. They sought an order (1) declaring that the security guards "have a constitutionally protected privacy interest in

communications are to occur. Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis and citations omitted). The SPI prevents Betzold from disclosing "names and other information concerning security guards from the Department of Commerce." Because the SPI restrains Betzold's future speech, it is a prior restraint.

"Any system of prior restraints of expression [bears] a heavy presumption against its constitutional validity," and a party who seeks to have such a restraint upheld "thus carries a heavy burden of showing justification for the imposition of such a restraint." *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (citations omitted). This burden, however, is not impossible to overcome. A prior restraint is permissible if the restrained speech poses "a grave threat to a critical government interest or to a constitutional right." *Procter & Gamble*, 78 F.3d at 225, 227 (vacating two TROs and a permanent injunction prohibiting *Business Week* from publishing discovery materials that had been filed as confidential pursuant to Rule 26 of the Federal Rules of Civil Procedure, because the planned publication did not pose a threat sufficient to justify the injunctive orders). In such a situation, however, the restraint must be narrowly drawn and be the least restrictive means available. *CBS Inc. v. Young*, 522 F.2d 234, 236, 238, 239-40 (6th Cir. 1975) (holding that an order prohibiting counsel, court personnel, parties, and parties' relatives, friends, and associates from discussing "in any manner whatsoever" the personal injury and wrongful death cases before the court was an invalid prior restraint because, among other reasons, of its "vagueness and overbreadth").

The plaintiffs contend that the SPI is justified because the need to protect the security guards' constitutional right to "personal safety and bodily integrity" outweighs the harm done by any infringement of Betzold's First Amendment

### 2.   First Amendment analysis

In general, we will reverse the issuance of a preliminary injunction only if the district court abused its discretion. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653, 657 (6th Cir. 1996) (holding that the district court did not abuse its discretion in issuing a preliminary injunction that prevented an employer from unilaterally changing the terms of its employee health insurance plan). "When presented with a motion for a preliminary injunction, a district court considers four factors: (1) the plaintiffs' likelihood of success on the merits, (2) whether the plaintiffs could suffer irreparable harm without the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) the impact of the injunction on the public interest." *Id*. at 653. "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Id.*

As the district court recognized, however, "[w]hen First Amendment rights are implicated, the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." This court has noted that, in general, when a district court issues a TRO, it is to "review factors such as the party's likelihood of success on the merits and the threat of irreparable injury," but "[i]n the case of a prior restraint on pure speech, the hurdle is substantially higher: publication must threaten an interest more fundamental than the First Amendment itself." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996). In reviewing a preliminary injunction with First Amendment implications, "the standard of review is different." *Id*. at 227. "We review First Amendment questions de novo." *Id.*

Betzold argues that the SPI is a "prior restraint" on speech that violates his rights under the First Amendment. One type of prior restraint is a judicial order "forbidding certain communications when issued in advance of the time that such

preventing the public release of registration applications which contain their name, social security number, home address, home telephone number, date of birth, fingerprints and photograph," and (2) enjoining the ODC from "allowing inspection of, or providing copies of," the registration applications containing such information with regard to any past or present employees of CSA who have worked at AK Steel's Mansfield facility. The plaintiffs also filed a motion for a preliminary injunction against the ODC. Both the complaint and motion for a preliminary injunction named the ODC as the sole defendant. Neither the summons, the complaint, the motion for a preliminary injunction, nor any supporting document mentioned Betzold, and he was not served with process.

Approximately one week later, on March 2, 2000, the plaintiffs filed a motion seeking a TRO to prevent the ODC and Betzold from disclosing the information contained in the security guards' registration applications. The plaintiffs asserted that they took this action because they had just learned that the ODC had mistakenly released the information to Betzold, and they suspected that Betzold would turn it over to the Union. They further feared that the Union would use the information to harass and intimidate the security guards working at the AK Steel facility during the lockout.

Without notifying Betzold, or requiring the plaintiffs to do so, the district court held an in-chambers conference with counsel for the plaintiffs and the ODC on the following day. The ODC did not contest the issuance of the TRO, and no effort was made to contact Betzold during the proceeding. That afternoon, the district court issued the TRO. It provided, among other things, that "Michael Betzold and all other persons who have received the names and information concerning the security guards from the Department of Commerce are enjoined from disclosing such names and other information to anyone else."

Betzold received a copy of the TRO on March 4, 2000. Because he "personally did not want to continue when I had an injunction issued against me," Betzold stopped working on the article. On March 22, 2000, the district court issued a "Notice of Preliminary Injunction Hearing" to be held on April 17, 2000, which was sent to counsel for the plaintiffs and the ODC, but again not to Betzold. Two days later, Betzold moved to intervene in the lawsuit that had spawned the TRO. Betzold states in his motion to intervene as of right that he was seeking to challenge the issuance of the TRO on the grounds that "any injunctive relief that issues or has issued against [him] is outside of the Court's authority under Rule 65(d) of the Federal Rules of Civil Procedure," and "this Court does not have personal jurisdiction over [him]." In the alternative, Betzold also argued that even if the court later decided that it did have jurisdiction over him, the ODC's release of the documents was lawful. Although Betzold's motion to intervene states that he intended to contest any past or future injunctive relief against him on these grounds, the motion itself did not make these arguments. It was instead concerned with establishing the requirements for intervention under Rule 24 of the Federal Rules of Civil Procedure.

On April 10, 2000, the district court signed an order granting Betzold's motion to intervene as of right. Without notice to Betzold and without holding a hearing, the district court also issued a "Stipulated Preliminary Injunction" (SPI) signed by counsel for the plaintiffs and the ODC the following day. Betzold's motion to intervene was granted on April 12, 2000, the same day that the PSI was entered of record. The SPI enjoined the ODC and Betzold from releasing not only the names of the guards, but also any "other information" from the registration applications, noting that "[n]either the Department of Commerce, nor its counsel, are willing to provide voluntary written assurance to Plaintiffs that additional information will not be released before the Court's final determination of Plaintiffs' claim." The district court found that the ODC's disclosures to Betzold, coupled with its failure to insure against further disclosures (which

future, and accordingly did not set forth such arguments as part of his motion to intervene. The district court could not fairly expect Betzold to anticipate that his motion to intervene would constitute his only opportunity to be heard concerning the substantive basis for denying an injunction. His motion to intervene therefore did not constitute a hearing on the merits of the SPI. The district court thus failed to comply with Rule 65(a)(1) when it issued the SPI before Betzold had an opportunity to be heard.

Betzold, however, did eventually have a hearing. In his motion to dissolve the SPI, Betzold did not limit himself to arguing that the SPI was procedurally deficient. Instead, he set forth substantive arguments on the merits of the injunction, contending that it should not have issued because the ODC lawfully disclosed to him the registration materials that he had received, and because the injunction was a prior restraint that violated his First Amendment rights. These are essentially the same arguments he makes on appeal. We therefore conclude that the district court's consideration of Betzold's motion to dissolve constituted a hearing on whether an injunction should issue. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (holding that where legal, and not factual, issues are in dispute, the notice requirement of Rule 65(a)(1) does not require an oral hearing, and that the court's consideration of legal memoranda may constitute a hearing so long as both parties are "given 'ample opportunity to present their respective views of the legal issues involved'") (citation omitted). As a result, the SPI ceased to suffer from procedural defects from the time of the district court's ruling on Betzold's motion in December of 2000. *Banke v. Novadel-Agene Corp.*, 130 F.2d 99, 101 (6th Cir. 1942) (holding that a rehearing on a motion to set aside a permanent injunction cured the lack of prior notice of the injunction). The SPI against Betzold is therefore procedurally sufficient.

#### c.  *Rule 65(a)(1) of the Federal Rules of Civil Procedure*

Pursuant to Rule 65(a)(1), "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  The type of notice required is not specified. In Betzold's motion to intervene, he objected to the district court's issuance of any orders that might adversely affect his interests.  Betzold therefore demonstrated his actual notice of the fact that proceedings had been initiated that might result in a preliminary injunction against him.

But the notice requirement of Rule 65(a)(1) also "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) (internal quotation marks omitted).  This court has held that Rule 65 "contemplates that the issuance of a preliminary injunction shall be upon notice to the adverse party *and after a hearing.*" *Carpenters' Dist. Council v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958) (emphasis added).

The plaintiffs argue that a hearing was not required because Betzold did not contest the factual basis underlying the SPI. A hearing on whether a preliminary injunction should issue, however, "embodies the right to be heard on the controverted facts, *as well as upon the law.*" *Id.* (emphasis added).  In his motion to intervene, Betzold gave the court notice of his intention to challenge the legal basis for the issuance of any future injunction against him.  He was therefore entitled to a hearing before the SPI issued.  *Id.*

The district court, in denying Betzold's motion to dissolve the injunction, held that his motion to intervene constituted a hearing prior to the issuance of the PSI.  We are of the opinion, however, that Betzold's motion to intervene cannot be so construed.  Betzold's motion to intervene quite properly focused on establishing the requirements for intervention.  He reserved his right to argue the merits of any injunction in the

might include the guards' social security numbers, home addresses, home telephone numbers, dates of birth, fingerprints, and photographs), provided the plaintiffs with "good reason to believe that unless the [ODC] is enjoined by this Court from releasing the registration applications, . . . the guards' private personal information may be released upon request."  As a result of the TRO and the SPI, all efforts to publish Betzold's article were halted.  The preliminary injunction hearing that had been scheduled for April 17, 2000 was never held.

On May 8, 2000, Betzold filed a motion to dissolve the SPI with respect to himself and any "non-parties" to the lawsuit or, in the alternative, to stay the injunction pending appeal. Betzold's supporting memorandum challenged the SPI on jurisdictional, due process, Rule 65, and First Amendment grounds.  When the district court failed to take action on his motion by May 10, 2000, the last day that he could timely appeal the SPI, Betzold filed a notice of appeal based upon the same grounds as his motion to dissolve the injunction. Betzold also petitioned this court for a writ of mandamus, and moved for a stay of the SPI pending a decision.

This court denied Betzold's mandamus petition and motion for a stay in June of 2000, but, while retaining jurisdiction over Betzold's appeal, returned the case to the district court for a ruling on the motion to dissolve.  On December 13, 2000, the district court denied the motion to dissolve, ruling on both Betzold's procedural and First Amendment objections.  Betzold's appeal then returned to this court.

## II.  ANALYSIS

### A.  Standing

The plaintiffs contend that Betzold lacks standing to pursue this appeal because he suffered no "injury in fact" as a result of the SPI.  Injury in fact is part of the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  As evidence of Betzold's

alleged lack of injury, the plaintiffs note that Betzold testified in his deposition that he did not intend to publish the security guards' names because there would have been "no news value" in doing so. The SPI, however, prohibits the disclosure of much more than the security guards' names. As Betzold points out in another part of his deposition testimony, "[t]he injunction, in fact, says that I am prohibited from using the names *and other information*, which would include their dates of hire and their status." (Emphasis added.)

The SPI's broad prohibition on the disclosure of "other information" in the materials Betzold received from the ODC results in a chilling effect on his ability to publish his news article, because Betzold might be found in contempt of court if he were to do so. As a result, Betzold has suffered an "injury in fact" sufficient to give him standing to appeal the TRO and SPI. *See Culinary Workers Union v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999) (per curiam) (holding, in a case where a union sought a TRO to enjoin the California attorney general from enforcing a statute that would prevent the union from distributing a handbill, that the union suffered an injury in fact, and therefore had standing, because of the chilling effect on its speech resulting from the attorney general's letter threatening to enforce the statute against the union).

### B.   The TRO

The TRO expired 10 days after it was issued on February 3, 2000, and was superseded by the issuance of the SPI on April 12, 2000. Thus, even if the TRO was improperly granted, the issue is now moot.

### C.   The SPI

#### 1.   *Procedural sufficiency*

##### a.   *Personal jurisdiction*

Betzold argues that because he was never served with process, the district court improperly subjected him to the

terms of the SPI. "It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 112 (1969) (holding that an injunction was improper because the defendant had not been served with process). In order to object to a court's exercise of personal jurisdiction, it is no longer necessary to enter a "special appearance." Instead, "[a] defendant must attack the validity of service of process pursuant to Rule 12(b)." *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 820 n.4 (6th Cir. 1981).

Betzold attempted in his motion to intervene to reserve his right to object to the district court's exercise of personal jurisdiction. This attempt, however, was unsuccessful, because a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction. *United States v. Oregon*, 657 F.2d 1009, 1017 n.18 (9th Cir. 1981) (holding that "[t]he court below gained personal jurisdiction over [the defendant] when it intervened as of right"); *City of Santa Clara v. Kleppe*, 428 F. Supp. 315, 317 (N.D. Cal. 1976) (holding that "[b]y voluntarily intervening in this action under Rule 24, F.R.C.P., [the defendant] has submitted to the jurisdiction of this court"). We therefore conclude that Betzold has waived his objections to the district court's exercise of personal jurisdiction over him.

##### b.   *Rule 65(d) of the Federal Rules of Civil Procedure*

Rule 65(d) provides that an injunction "is binding only upon the parties to the action. . . ." Fed. R. Civ. P. 65(d). Betzold became a party when the district court granted his motion to intervene on April 12, 2000, the same day that the SPI was issued. As a result, the district court's issuance of the SPI against Betzold did not contravene Rule 65(d).