**Bilal KARHANI and Mohammed Karhani, Plaintiffs,**

v.

**MEIJER, a Michigan corporation, Lynnette Susan Rector, Daniel Joe Aquilina, City of Fraser, a municipal corporation, and Police Officer Hoppe, jointly and severally, Defendants.**

No. 03–CV–71654–DT.

United States District Court, E.D. Michigan, Southern Division.

June 6, 2003.

Majed A. Moughni, Dearborn, MI, for plaintiff.

Ronald G. Acho, Livonia, MI, for defendant.

**ORDER DENYING DEFENDANT MEIJER AND DEFENDANT LYNNETTE SUSAN RECTOR'S MOTION FOR TEMPORARY RESTRAINING ORDER**

BORMAN, District Judge.

Now before the Court is Defendant Meijer and Defendant Lynnette Susan Rector's motion for temporary restraining order. The Court heard testimony and oral argument on June 4, 2003. Having considered the entire record, and for the reasons that follow, the Court DENIES the Defendants' motion for temporary restraining order.

### FACTS

The underlying claims set forth in the Second Amended Complaint filed by Plaintiffs Mohammed and Bilal Karhani, father and son, arise out of an altercation which took place on February 28, 2003 at a Meijer supermarket gas station in Fraser, Michigan. The event has spawned leafleting by Plaintiffs and media stories. Currently before the Court is Defendants Meijer and Lynnette Susan Rector's motion for temporary restraining order. These Defendants seek to enjoin the Plaintiffs

from distributing leaflets which allegedly contain "inaccurate, incomplete and misleading information" concerning the February 28, 2003 incident.

### (i) February 28, 2003 Incident

A brief description of the underlying incident follows. Plaintiffs' Second Amended Complaint, filed on February 28, 2003, alleges that Plaintiffs stopped at a Meijer supermarket gas station in Fraser, Michigan, in order to purchase gasoline. (Compl. ¶ 8.) Bilal Karhani pumped gas while his father went into the office to charge the purchase on his credit card. Defendant Lynnette Susan Rector ("Rector"), a Meijer cashier, allegedly told Plaintiff Mohamad Karhani that she could not process his credit card while gas was still being pumped. (*Id.* ¶ 9–13.) Bilal Karhani then entered the station to complete the transaction, and complained about Rector not processing the credit card transaction for his father. Rector allegedly stated: "I don't have to explain nothing to nobody.... I don't have to serve you guys, you can't make me serve you guys."[1] (*Id.* ¶ 14–15.)

Plaintiff Bilal Karhani (hereinafter "Karhani") claims that although Rector agreed to complete the sale, it appeared that she was charging him twice, once through the electronic credit card reader, and a second time on a manual credit card machine. (*Id.* ¶ 16–17.) Karhani claims that as he pointed at the manual credit card machine, it flipped over the counter. (*Id.* ¶ 18.)

At this point, the Complaint alleges that Defendant Daniel Joe Aquilina, a customer in the store, intervened, pushing Karhani and stating "You fuckin Arabs get the fuck out of here," and "You fuckin Arabs, get the fuck out of here, you TERRORISTS, go back to your country." (*Id.* ¶ 19–20, 22.) Karhani also alleges that Defendant Rector stated: "You Arabs get out of here, we don't want to serve you guys, we don't have to serve you, go back to your country ... Dirty Arabs."[2] (*Id.* ¶ 21.)

Karhani's complaint acknowledges that he was arrested as a result of this incident, (*Id.* ¶ 25), and plead guilty to assault and battery, and malicious destruction of property under $200. (*Id.* ¶ 26.) He was sentenced to twelve months probation, fined, and ordered to take anger management classes. (*Id.* ¶ 27.)

Karhani's version of events conflicts with the other eyewitness testimony, as well has Karhani's own statement given to Defendant, City of Fraser Police Officer Hoppe, after the incident. According to Rector, she simply informed Plaintiff Mohamed Karhani that he could not pay by credit card while his son was still pumping gas. (Def.'s Br. Exh. B—Police Report.) Thereafter, Karhani allegedly entered the store "irate." (*Id.*) Although Rector attempted to explain the situation to Karhani, he became increasingly agitated, yelling at Rector, using profanity, and speaking in another language.[3] (*Id.*) Karhani briefly left the gas station; he returned a short time later and threw/flipped the credit card machine at Rector, striking her in the arm. (*Id.*) Karhani then had a brief encounter with Defendant Aquilina. Karhani, once again, left the gas station, only to return a second time with two bottles of windshield washer fluid. (*Id.*) He threw

---

1. During the evidentiary hearing, Ms. Rector testified that she did not make any such statement. Plaintiffs chose not to testify at the hearing.

2. During the evidentiary hearing, Ms. Rector testified that she did not make any such statement.

3. According to a third-party bystander, Robert Rushman, who speaks some Arabic, Karhani called Rector a "bitch" and stated "suck my dick." (*Id.*)

one bottle at Aquilina and another on the ground. One of the bottles broke, spilling fluid in the gas station. Rector's version of events is confirmed by Aquilina, and another third-party bystander. (*Id.*)

Karhani also gave a statement to Officer Hoppe after the incident. According to this statement, Rector informed Karhani that she could not process his credit card while gas was being pumped. (*Id.*) Karhani, however, did not like Rector's "attitude," and consequently, he began to get angry. Karhani became even more enraged when he allegedly saw Rector processing his credit card for a second time. After getting no response to his inquiries, he pushed the credit card machine at Rector. Karhani claimed that Aquilina then "charge[d] him"; Karhani contends that he was merely defending himself by throwing the two bottles of windshield washer fluid.

### (ii) The Leaflets and Meijer's Motion for Temporary Restraining Order

Plaintiffs, in conjunction with third-party organizations, have distributed leaflets in Dearborn, Michigan and in other Meijer store locations. A leaflet states:

**"You Arabs get out of here, we don't want to serve you guys ..."**

Those were the words of a Meijer employee who refused to serve Bilal and Mohammed Karhani. On February 28, 2003, Bilal and his father, Mohammed, were filling up gas at the Meijer gas station in Fraser, MI. Mohammed entered the store to pay for the gas. The Meijer cashier refused to accept the credit card payment. She said, "we don't take credit cards ... we closed the machines."

The entire event was caught on the store's surveillance cameras. The video clearly shows the Meijer cashier standing still, with her arms folded, refusing to provide service. As events unfolded, another customer began swearing and cursing at Bilal and Mohammed. Instead of calling security, the cashier joined this customer in ethnic intimidation. The Meijer cashier shouted, "You Arabs get out of here, we don't want to serve you guys, we don't have to serve you. Go back to your country ... Dirty Arabs."

A spokeswoman for Meijer said, "... our team member didn't do anything wrong."

*Call Meijer and let them know how you feel: 1–800–XXX–XXXX* For details call Majed A. Moughni, attorney for Bilal Karhani: (313) XXX–XXXX

(Pl.'s Mtn. Exh. C; *see also* Exh. D.)

Meijer seeks to enjoin distribution of these leaflets, arguing that they contain "inaccurate, incomplete and misleading information," and thus do not contain a fair or accurate representation of what occurred. Meijer argues that distribution of the leaflets is harmful and prejudicial to its business reputation. Meijer also argues that the leaflets interfere with its ability to obtain a fair trial in this Court.

### ANALYSIS

The Sixth Circuit has held that a court must consider four factors when deciding whether to issue a temporary restraining order (TRO) or preliminary injunction: (1) whether the party has demonstrated a strong likelihood of success on the merits; (2) whether the movant has demonstrated irreparable injury; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest is served by the issuance of an injunction. *Teamsters Local Union 299 v. U.S. Truck Co. Holdings,* 87 F.Supp.2d 726, 733 n. 2 (E.D.Mich.2000) (citations omitted). These considerations are merely factors to be balanced, "not prerequisites that must be met." *Id.* (citations omitted). However, a finding that there is no likeli-

hood of success on the merits is usually fatal. *Gonzales v. National Bd. Of Medical Examiners*, 225 F.3d 620, 625 (6th Cir.2000)

In this case, Defendant Meijer has also filed a separate motion to dismiss. Meijer argues that this motion demonstrates a strong likelihood of success with respect to Plaintiffs' state law claims. The motion is not before the Court for resolution at this time. However, even assuming *arguendo,* that such an argument is correct, such success provides no basis for enjoining Plaintiffs' constitutionally protected speech. Simply stated, success on Plaintiffs' underlying state law claims bears no relation to Plaintiffs' ability to exercise their First Amendment right to distribute leaflets.

Meijer can bring an action for defamation or libel against the Plaintiffs; Meijer, however, has failed to file any such counterclaim.[4] The usual remedy for defamation is an action for damages. Furthermore, even if such a counterclaim was filed in this case, the issuance of an injunction prior to a full adjudication of the merits, as noted *infra,* would constitute a wholly inappropriate and unconstitutional prior restraint under the First Amendment.

## A. The Leaflet is Not Commercial Speech

■ Meijer, in its original brief supporting its motion for temporary restraining order, argues that the leaflets are commercial speech, subject to less protection under the First Amendment. In support, Meijer cites to the small print at the bottom of the leaflet, which states: "For details call Majed A. Moughni, attorney for Bilal Karhani: . . ." (Pl.'s Exh. C) (phone number redacted). According to Meijer: "The nature of the distribution of the leaflets and the location of the distribution in close proximity to the law office of Plaintiff's counsel, negates any claimed privilege of the contents of the leaflets." (Pl.'s Br. at 10.)

■ The Supreme Court has recognized that commercial speech is accorded less protection under the First Amendment than other constitutionally guaranteed expression. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 562–63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). However, because commercial speech receives less protection, the subject matter that can be labeled as commercial speech is construed narrowly by the courts. *United States Olympic Committee v. American Media, Inc.,* 156 F.Supp.2d 1200, 1207 (D.Colo.2001).

"Commercial speech has been defined as 'expression related solely to the economic interests of the speaker and its audience' or 'speech proposing a commercial transaction.'" *King Enterprises, Inc. v. Thomas Township,* 215 F.Supp.2d 891, 910 (E.D.Mich.2002); *American Media,* 156

---

4. Court have long held that "equity will not enjoin a libel" absent extraordinary circumstances. *Metropolitan Opera Ass'n v. Local 100, Hotel Employees and Restaurant Employees Int'l Union,* 239 F.3d 172, 177 (2d Cir. 2001) (discussing numerous cases). As discussed *infra,* extraordinary circumstances do not exist in this case. The Sixth Circuit has, however, permitted an injunction in very limited circumstances—the court has allowed a permanent injunction for statements *found by the trier-of-fact* to be libelous. *See Lothschuetz v. Carpenter* 898 F.2d 1200, 1209 (6th Cir.1990) (Wellford, J., for the court, concurring in part, dissenting in part). Thus, while the Sixth Circuit has permitted a remedial injunction for statements found by the trier of fact to be libelous, the circuit has never departed from the general rule prohibiting unconstitutional prior restraints with respect to temporary restraining orders and/or preliminary injunctions absent extraordinary circumstances. In the instant case, there has not been a judicial finding of fact that any statements are false and libelous.

F.Supp.2d at 1207. According to the Supreme Court, "[t]he First Amendment's concern for commercial speech is based on the informational function of advertising." *Central Hudson*, 447 U.S. at 563, 100 S.Ct. 2343.

> Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information. In applying the First Amendment to this area, we have rejected the "highly paternalistic" view that government has complete power to suppress or regulate commercial speech. "[P]eople will perceive their own best interests if only they are well enough informed, and ... the best means to that end is to open the channels of communication rather than to close them...."

*Id.* at 561–62, 100 S.Ct. 2343 (citation omitted).

The U.S. Supreme Court has identified three relevant factors to be utilized when determining whether speech is commercial: "(1) whether the speech in question is concededly an advertisement; (2) whether it makes reference to a specific product; and (3) whether it is motivated by economic interest." *American Media*, 156 F.Supp.2d at 1207 (discussing *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66–67, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)). Based on this criteria, it is obvious that the leaflet is not commercial speech as narrowly defined by the Supreme Court. The leaflet, in its entirety, describes alleged ethnic intimidation and discrimination, and urges the reader to contact Defendant Meijer. Such communication involves a clear matter of public concern, and represents speech lying at the core of First Amendment protection. A lower threshold does not apply in this case.

Although the original leaflet had contained attorney Moughni's name and phone number, these items have been deleted from any continuing leaflets pursuant to a stipulation entered into by counsel for both parties, and memorialized in a letter. This deletion undercuts Defendant's principal argument for labeling the present leaflet before the Court as commercial speech.

### B. An Injunction Would Constitute an Unconstitutional Prior Restraint

The First Amendment to the U.S. Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. Peaceful pamphleteering is a form of communication protected by the First Amendment. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971).

Cases addressing the First Amendment have defined a "prior restraint" as an administrative or judicial order that blocks expressive activity before it can occur. *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 506 (6th Cir.2001) (citing *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)); *see also Weaver v. Bonner*, 309 F.3d 1312, 1323 (11th Cir. 2002) (same). "Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander*, 509 U.S. at 550, 113 S.Ct. 2766; *see also Polaris Amphitheater*, 267 F.3d at 507 ("Injunctions are indeed at the 'core of the prior restraint doctrine.'").

"Any prior restraint on expression comes ... with a 'heavy presumption'

against its constitutional validity." *Keefe*, 402 U.S. at 419, 91 S.Ct. 1575; *see also County Security Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002). "Indeed, prior restraints are 'the most serious and the least tolerable infringement on First Amendment rights.' " *Metropolitan Opera Ass'n v. Local 100, Hotel Employees and Restaurant Employees Int'l Union*, 239 F.3d 172, 176 (2d Cir.2001).

> When a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech protected under the First Amendment increases. An injunction must be obeyed until modified or dissolved, and its unconstitutionality is no defense to disobedience.... In contrast, a "criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative."

*Metropolitan Opera*, 239 F.3d at 176 (citations omitted).

Clearly, a temporary restraining order, enjoining Plaintiffs from distributing leaflets, would constitute a prior restraint on protected speech. As noted by Plaintiffs, the Supreme Court's decision in *Keefe* is directly on point. There, the Organization for a Better Austin ("OBA"), distributed leaflets describing the respondent's alleged "blockbusting" and "panic peddling" activities—arousing the fears of local white residents that African Americans were moving into the neighborhood, and then exploiting their reactions to secure real estate listings. *Keefe*, 402 U.S. at 416–417, 91 S.Ct. 1575. The OBA acknowledged that it utilized this tactic with the hope that the respondent would sign a no-solicitation agreement. *Id.* The Supreme Court vacated the injunction enjoining the OBA from distributing the leaflets. The Court stated:

> It is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or validity of the publication. Under *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), the injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights. Here, as in that case, the injunction operates, not to redress alleged private wrongs, but to suppress, on the basis of previous publications, distribution of literature "of any kind" in a city of 18,000.

*Id.* at 418–19, 91 S.Ct. 1575. The Court also rejected the respondent's argument that the literature was not protected by the First Amendment because the OBA hoped that it would have a coercive impact on the respondent. The Court stated:

> The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment. Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. But so long as the means are peaceful, the communication need not meet standards of acceptability.

*Id.* at 419, 91 S.Ct. 1575 (citation omitted).

■ Meijer's attempts to distinguish *Keefe* are unconvincing. Meijer argues that *Keefe* did not involve Sixth Amendment rights. (Reply Br. at 7.) The Sixth Amendment, however, applies, by its terms, only to criminal prosecutions; the

Sixth Amendment does not govern civil trials. *Ricketts v. City of Hartford,* 74 F.3d 1397, 1407 (2d Cir.1996); *Kirby v. Dutton,* 794 F.2d 245, 246 n. 1 (6th Cir. 1986). Meijer also argues that, unlike this case, *Keefe* involved a broad "no solicitation" order. (Reply Br. at 7.) The breadth of the injunction, however, played no role in the Court's decision.[5] Instead, the Court was simply concerned with the impermissible restraint on First Amendment speech caused by the prior restraint imposed by the state courts. As stated by the Court in *Keefe:*

> No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court. Designating the conduct as an invasion of privacy, the apparent basis for the injunction here, is not sufficient to support an injunction against peaceful distribution of informational literature of the nature revealed by this record.

*Keefe,* 402 U.S. at 419–20, 91 S.Ct. 1575.

■ The Defendants also argue that an injunction is necessary in order to ensure that they receive a fair trial.[6] The Sixth Circuit has recognized that an exception to the prior restraint doctrine exists for speech that "poses 'a grave threat to a critical government interest or to a constitutional right.'" *County Security Agency v. Ohio Department of Commerce,* 296 F.3d 477, 485 (6th Cir.2002) (quoting *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226–27 (6th Cir.1996)). More specifically, a court must find "clear and present danger" in order to impose a prior restraint on a civil litigant.[7] *See United States v. Ford,* 830 F.2d 596, 600 (6th Cir.1987); *CBS, Inc. v. Young,* 522 F.2d 234, 238 (6th Cir.1975).

> Such a threat must be sporadic, not general. It must be much more than a possibility or a "reasonable likelihood" in the future. It must be a "serious and imminent threat" of a specific nature, the remedy for which can be narrowly tailored in an injunctive order.

*Ford,* 830 F.2d at 600; *see also Young,* 522 F.2d at 238–39 (discussing *Chase v. Robson,* 435 F.2d 1059 (7th Cir.1970)).

The distribution of leaflets by Plaintiffs does not pose a serious and imminent threat. The litigation is in its infancy; it is doubtful that the leaflets, at least during the present time period, will have any lasting affect on the jury pool for a trial that is many months in the future.[8] Furthermore, while the case has generated

---

**5.** Similarly, the OBA's intentions in distributing the leaflets played no role in the Court's decision.

**6.** Michigan Rule of Professional Conduct 3.6 is not currently before the Court. Counsel for the Plaintiffs has agreed not to distribute any further leaflets. Additionally, counsel has issued a letter requesting that further distribution of the leaflets cease immediately. Thus, the less demanding standard for lawyers representing clients, discussed by the Supreme Court in *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), is not directly applicable to this case.

**7.** According to the Sixth Circuit; "We see no legitimate reasons for a lower threshold standard for individuals, including defendants, seeking to express themselves outside of court than for the press." *Ford,* 830 F.2d at 598 (citation omitted).

**8.** The Court notes that it would reach the same conclusion under the attorney standard advocated by the Defendants. The Defendants cite *United States v. Brown,* 218 F.3d 415, 425–28 (5th Cir.2000), where, the Fifth Circuit held that after *Gentile v. State Bar of Nevada, supra,* the standard applicable to trial participants should be no more stringent that the standard for trial attorneys—the court must determine whether the speech would create a "substantial likelihood" of prejudicing the court's ability to conduct a fair trial. While the Court disagrees with the Fifth Circuit's extension of *Gentile* to prior restraints

media publicity—newspaper articles, and television and radio discussions—the sporadic nature of the coverage does not at this time appear to pose a risk to the jury pool. If leafleting and media reports continue, then the Court will assess its options as the case draws closer to trial. The Court notes that potential prejudice to the jury pool can be evaluated by vigorous voir dire. *See Ford,* 830 F.2d at 599 (noting less restrictive approaches, such as a change of venue, the sequestration of the jury, or a searching voir dire examination of the jury). Nothing in the current record before the Court compels the conclusion that Meijer will be unable to receive a fair trial in the future.

The Court notes that the hearing produced evidence that the pamphleting has resulted in issues of economic boycott, and threatening phone calls to Meijer in addition to advocacy calls. These issues of concern can be dealt with by Meijer in the media or directly to its customers—in addition to the aforementioned discussion of a suit against the leafleting parties for libel or defamation. Further, as to threatening calls, Meijer can access law enforcement to deal with their concerns.

### CONCLUSION

For the foregoing reasons, the Court concludes that the issuance of an injunction banning leafleting would constitute an unconstitutional prior restraint of speech under the First Amendment. Consequently, the Court DENIES Defendant Meijer and Defendant Lynnette Susan Rector's motion for a temporary restraining order.

SO ORDERED.

of mere trial participants, Defendants have failed to satisfy even this lower standard in